UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVE HILDEBRANDT, et al., § | |
| § | |
| Plaintiffs, § | |
| § | CIVIL ACTION NO. 3:08-CV-1815-B |
| v. § | |
| § | (Part of MDL No. 1983; Formerly |
| INDIANAPOLIS LIFE INSURANCE § | No. CV 08-825-PHX-MMM in the |
| COMPANY, et al., § | District of Arizona) |
| § | |
| Defendants. | |

# MEMORANDUM OPINION

Having considered Defendant AmerUs Group Company's ("AmerUs") Motion to Dismiss (doc #31), Plaintiffs' Response, AmerUs' Reply, and all arguments and evidence in support and opposition, the Court GRANTS the Motion as set forth herein.

## I.

## BACKGROUND

The Court takes its factual account from Plaintiffs' First Amended Complaint, filed April 8, 2008. Plaintiffs are Dave Hildebrandt ("Hildebrant") and Desert Vista Marketing Group ("Desert Vista") (collectively, "Plaintiffs). (Compl. ¶¶ 1-2). At all relevant times, Hildebrandt served as Desert Vista's President. (*Id.*). Plaintiffs' claims concern a defined benefit plan ostensibly designed and marketed as a plan compliant with Section 412(i) of the Internal Revenue Code, which was to be funded by "PenPro" life insurance policies issued by Defendant Indianapolis Life Insurance Company ("Indianapolis Life"). (Compl. ¶¶ 20, 27).

Section 412(i) plans exempt certain defined benefit plans from rules applicable generally to

retirement plans. (Compl. ¶ 26). Thus, establishing a section 412(i) plan is particularly attractive to employers tax-wise, because they can provide employees with retirement benefits, in the form of a life insurance policy, while also taking a tax deduction for premiums paid on that policy. (Compl. ¶¶ 26, 33, 36). Plaintiffs assert that the PenPro life insurance policies with which their plan was funded have a "springing cash value" that relies on an artificially depressed cash value of the policy in its early years followed by a rapid rise in the value in subsequent years. (Compl. ¶¶ 33, 36). For example, although more than $1 million in premiums would be paid by Desert Vista for the policy under the plan, after five years, the cash value of the policy would only be $215,000. (Compl. ¶ 33). Hildebrandt could then purchase the underlying policy for that amount and pay taxes only on the $215,000 (a considerable tax savings) but over the next five years, the policy would accrue additional cash value, with no additional payments, so that the policy would eventually be valued at least at the amount paid in premiums but no taxes would be paid on the increase. (*Id.*)

Plaintiffs allege that they set up and funded a defined benefit plan with PenPro life insurance policies based on the representations made by Defendants that the plan as funded complied with section 412(i) when in reality the plan was actually a tax shelter that Defendants knew or should have known was very risky and would be deemed by the IRS as abusive and illegal. (Compl. ¶¶ 22, 34-35, 38, 48-49). Plaintiffs assert that Defendants both affirmatively misled them into believing the plan was a safe way to invest for retirement and failed to disclose the tax-related risks, particularly those risks based on the "springing cash" nature of the underlying insurance policies. (Compl. ¶ 48).

Having set up the plan in 2002 and after paying annual premiums for the PenPro policies with which it was funded, in April 2004, Plaintiffs learned that the IRS was auditing the 2002 tax return for the plan. (Compl. ¶¶ 49, 52, 54). The IRS ultimately determined that the plan did not

qualify as a section 412(i) plan and assessed back taxes and penalties on Plaintiffs in excess of the premium paid for that year. (Compl. ¶ 62).

Specific Allegations and Facts regarding Defendant AmerUs

AmerUs, an Iowa corporation, is the parent company of Indianapolis Life. (Compl. ¶ 4). AmerUs does not do business in Arizona, does not maintain offices or have employees there, and does not maintain an agent for service of process in Arizona. (Gustafson Decl. ¶¶ 4,7). AmerUs owns no property in Arizona and does not solicit business or otherwise market or sell goods or services in Arizona. (*Id.* ¶¶ 9, 12, 13). Plaintiffs' only allegation of AmerUs' jurisdictional connection to Arizona is the statement that "[t]he Court has personal jurisdiction over all non-resident defendants by virtue of their sufficient minimum contacts with the State of Arizona, as described below." (Compl. ¶ 25).

Plaintiffs do not refer to AmerUs by name in any allegation in the Complaint, outside of the party identification paragraph four. Instead, Plaintiffs define the term "Indy Life" to include Defendant Indianapolis Life, AmerUs, and a company alleged to be the holding company of AmerUs--Aviva PLC. (Compl. ¶ 6). Considering AmerUs as part of the ambiguous "Indy Life," the Complaint does state several contacts between "Indy Life" and the State of Arizona. *See, e.g.*, Compl. ¶¶ 43, 49-50, 52). However, as Plaintiffs explain in their Response to AmerUs' Motion to Dismiss, they do not allege that AmerUs was directly involved in any activity that is the subject of the Complaint. Pls.' Resp. at 5. Instead, Plaintiffs allege that the direct actor--Indianapolis Life--acted as the agent for AmerUs and as such, Indianapolis Life's contacts with Arizona should be imputed to AmerUs. The agency allegations consist solely of paragraphs 19 and 130-32 in which

Plaintiffs allege that every Defendant was the agent of every other Defendant.[1]

Plaintiffs assert claims against AmerUs for, *inter alia*, common law fraud, breach of fiduciary duty, rescission, unjust enrichment, negligent misrepresentation, and violations of Arizona state statutes. AmerUs moves to dismiss all claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II.

## ANALYSIS

Because the Court is hearing this matter as a result of a forum transfer by the Multidistrict Litigation Panel, the law of the transferor forum applies, rather than the law of this Court. Multidistrict Litig. Manual § 9:18; *In Re Data Gen. Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1227-28 (J.P.M.L. 1979) ("It is within the very nature of coordinated or consolidated proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state. Thus, all parties can be assured that the law of the transferor district, as well as any other state's law, if appropriate will be duly applied by the transferee judge.") (internal citations omitted). Essentially this Court stands in the shoes of the District of Arizona court, subject to the precedent

---

[1]Paragraph 19 alleges that "[A]ll defendants…at all relevant times were acting as one another's agents, actual or apparent…The defendants identified as business entities were at all relevant times acting by and through officers, agents, and employees who were acting within the scope of their employment, authority, and agency, and were acting in concert as an enterprise such that these corporations or other such entities are bound by and vicariously and jointly and severally liable for the conduct of their own officers, agents, and employees, and those of their co-defendants."

Paragraphs 130-132 provide that "At all times material herein, defendants acted for themselves through and by the acts and omissions of their attorneys and agents. Defendants' attorneys' and agents' actions were all undertaken during the course and scope of their representation and agency, actual and/or apparent, of the defendants. Under the doctrine of respondeat superior and general principles of agency, defendants are liable for the acts and omissions of their agents and attorneys."

of that district and its Circuit court.

A plaintiff bears the burden of establishing a trial court's jurisdiction over each defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If an evidentiary hearing is not held, a plaintiff need only establish a prima facie case of jurisdiction; proof by a preponderance of the evidence is not required. *Data-Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284-85 (9th Cir. 1977). In deciding whether the plaintiff has made a prima facie case, uncontroverted factual allegations in the Complaint must be taken as true. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a forum state court. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Because Arizona's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Williams v. Lakeview Co.*, 13 P.3d 280, 282 (Ariz. 2000) (en banc); *Batton v. Tenn. Farmers Mut. Ins. Co.*, 736 P.2d 2, 4 (Ariz. 1987) (en banc) (noting that a two step process of looking at the Arizona long arm rule and then at due process is unnecessary because if the constitutionally required minimum contacts are present, the defendant's conduct necessarily satisfies the long arm rule). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it should reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend

traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 485-86 (1985); *A. Uberti and C v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995).

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Williams*, 13 P.3d at 282. To demonstrate specific jurisdiction, the plaintiff must establish (1) that the defendant in question undertook some activity in, or purposefully directed some act at, Arizona, *(2)* that the plaintiff's claims arise out of or result from those activities, and (3) that it would be reasonable to exercise jurisdiction. *Id.; see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997).

General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Batton,* 736 P.2d at 4 *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A plaintiff's own activity, without more, cannot be the basis for the exercise of jurisdiction over a non-resident. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). "The analysis ultimately reduces to whether the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Although Plaintiffs fail to state whether they are alleging general jurisdiction or specific jurisdiction over AmerUs, their jurisdictional argument is based on their allegation that Indianapolis Life acted as the agent for AmerUs in all of the alleged wrongdoing in the Complaint. Pls.' Resp. Br. at 5. Thus, Plaintiffs argue that Indianapolis Life's acts in Arizona should be imputed to AmerUs for jurisdictional, and indeed all, purposes. Typically, the existence of a parent-subsidiary

relationship between two companies is not sufficient to establish jurisdiction over the parent on the basis of the subsidiary's contacts with the forum. *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985). This jurisdictional rule is a corollary of the well-settled principle of corporate separateness under which a parent corporation, simply by virtue of its ownership of the subsidiary, is not liable for the acts of the subsidiary company. *See, e.g., U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) (citing various sources for this principle). However, it is appropriate to look past purported corporate separateness when the parent and subsidiary are not really separate but instead the subsidiary acts as an agent of the parent. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (citation omitted).[2] If the subsidiary is acting as the parent's agent, the subsidiary's contacts with a forum may be imputed to its parent for jurisdictional purposes. *Id.*

"To satisfy the agency test, a plaintiff must make a prima facie showing that the subsidiary represents the parent corporation by performing services 'sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the [parent] corporation ... would undertake to perform substantially similar services.' The agency test permits the imputation of contacts where the subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (internal citations omitted). In considering agency, the Ninth Circuit recognizes a distinction in the relationship between a

---

[2]The acts of a subsidiary may also be imputed to its parent if the companies are alter egos such that "the parent controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the former.'" *Doe*, 248 F.3d at 926 (citation omitted). Plaintiffs do not appear to allege that Indianapolis Life is the alter ego of AmerUs. Thus, this theory of jurisdiction over AmerUs is not evaluated.

holding company and its subsidiary versus a parent company and its subsidiary. *Doe*, 248 F.3d at 929. "Where a holding company is nothing more than an investment mechanism...the subsidiaries conduct business not as its agents but as its investments." *Id. citing Bellomo v. Penn. Life Ins. Co.*, 488 F. Supp. 744, 746 (S.D.N.Y. 1980).

Plaintiffs argue that they have made the requisite showing that Indianapolis Life is the agent for AmerUs by pleading that Indianapolis Life is AmerUs' agent. Plaintiffs assert that their pleading is further supported by AmerUs' own statements about its business. The Court finds that Plaintiffs' allegations are insufficient to support a prima facie showing of agency. First, Plaintiffs never explicitly allege that Indianapolis Life is an agent for AmerUs. Plaintiffs' generic recitation that each Defendant acted as the agent for every other Defendant cannot be characterized as anything more than a mere conclusion. Plaintiffs allege no facts to support their conclusory statement. There are no facts alleged, much less proven as a prima facie matter through admissible evidence, to satisfy the agency test under Ninth Circuit law. There are no allegations that Indianapolis Life performed services that otherwise would have been performed by AmerUs if Indianapolis Life had not performed them. Similarly, there is no evidence that Indianapolis Life was established to engage in activities in which, but for that subsidiary's existence, AmerUs would instead be directly involved. *Doe*, 248 F.3d at 928.

Second, AmerUs has presented evidence that it is merely a holding company and does not underwrite or sell insurance policies to consumers in Arizona or any other state. Gustafson Decl. ¶ 5. Relatedly, AmerUs is not a party to any insurance contracts issued by Indianapolis Life, including those policies that form the basis of this matter. *Id.* ¶ 15. Thus, the admissible evidence before the Court shows that AmerUs is more like a holding company under *Doe* in that it engages

in the business of investment and does not itself conduct the same type of business as its subsidiary Indianapolis Life.[3] The documents submitted by Plaintiffs in support of their allegation that AmerUs is anything beyond a holding company do not contradict AmerUs' sworn testimony.[4]

Plaintiffs rely on the statement in their Exhibit 1 that "AmerUs...is engaged through its subsidiaries in the business of marketing individual life insurance and annuity products in the United States" as proof that AmerUs does not merely hold Indianapolis Life as an investment. The Ninth Circuit rejected a similar argument in *Doe* when the plaintiff there argued that the parent's discussion in its annual report of how its subsidiary's operation would allow the parent to expand its network and production was sufficient to state a prima facie case for jurisdiction over the parent. *Doe,* 248 F.3d at 929. As the *Doe* court observed, consolidating the activities of a subsidiary with the parent's activities is common business practice and inclusion of statements about the benefits of the subsidiary's operations to the parent "do not justify the conclusion that [the parent] would perform the activities of its [subsidiary] were they unavailable to act as its 'representative.'" *Id.* The statements on Exhibit 1 are not different than the type of statements considered in *Doe.* The other promotional materials submitted by Plaintiffs as Exhibits 2 and 3 fare no better. The fact that AmerUs talks about its subsidiaries as "its companies" and refers to their customers and products as

---

[3]Again, although the Court recognizes its obligation to take as true any uncontroverted factual allegations in the Complaint, it finds no factual allegations in the Complaint supporting Plaintiffs' ultimate conclusory assertion that Indianapolis Life served as AmerUs' agent. *Boschetto,* 539 F.3d at 1015.

[4]Plaintiffs have not submitted any admissible evidence, instead attaching unauthenticated copies of pages they argue are from AmerUs' website. *See* Exs. 1-4 to Pls.' Resp. Br. For the purposes of this analysis, the Court assumes that the pages are as Plaintiffs purport and cautions counsel to adhere to the Federal Rules in the future. However, with respect to Exhibit 4, the Court notes that this exhibit does not appear to concern Defendant AmerUs Group, but instead concerns a different entity, and as such it is given no consideration.

its own does not justify the conclusion that it would perform Indianapolis Life' activities if Indianapolis Life were not. *See* Ex. 2. Contrary to Plaintiffs' unexplained assertion, the Court does not view Indianapolis Life's mere identification of itself as "An AmerUs Company" as evidence that it is an agent of AmerUs. *See* Ex. 3. Clearly, as a subsidiary, Indianapolis Life is in fact "An AmerUs Company"--a statement of that association does not imply, much less establish at even a prima facie level, that it is an agent under Ninth Circuit authority.

## III.

## CONCLUSION

In short, Plaintiffs have failed to meet their burden of making a *prima facie* showing that this Court has personal jurisdiction over Defendant AmerUs. Plaintiffs' allegation that Indianapolis Life acted as an agent of AmerUs (such that Indianapolis Life's activities in the State of Arizona may be imputed to AmerUs for purposes of personal jurisdiction), are contradicted by the unrebutted Declaration of Leif Gustafson. *See* Ex. 1 to Def. Mot. to Dismiss. (Doc. # 31). Absent the ability to impute the subsidiary's contacts with the forum to the parent, the Court finds no minimum contacts under principles of either general or specific jurisdiction between AmerUs and the State of Arizona. Accordingly, the Court does not reach the question of whether exercising jurisdiction would be reasonable. For the reasons stated above, Defendant AmerUs Group Company's Motion to Dismiss for lack of personal jurisdiction is GRANTED. Defendant AmerUs is dismissed from further proceedings in this action.

SO ORDERED.

Dated: February 17, 2009

                                                      JANE J. BOYLE
                                                      UNITED STATES DISTRICT JUDGE