UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVE HILDEBRANDT, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 3:08-CV-1815-B |
| v. | § | |
| | § | (Part of MDL No. 1983; Formerly |
| INDIANAPOLIS LIFE INSURANCE | § | No. CV 08-825-PHX-MMM in the |
| COMPANY, et al., | § | District of Arizona) |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION

This case involves a tax shelter investment program and is before the Court as a result of a

forum transfer from a federal district court in Arizona to this Court by the Multidistrict Litigation

Panel. Before the Court is Defendant Bryan Cave LLP's Motion to Dismiss First Amended Class

Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum in Support, filed June 4,

2008. (doc. 29). Having considered the motion, response, reply, pleadings and applicable law, the

Court grants in part and denies in part the Motion as set forth herein.

I.

BACKGROUND

Plaintiffs are Desert Vista Marketing Group ("Desert Vista") and it president, Dave

Hildebrandt ("Hildebrant") (collectively, "Plaintiffs"). Pl. First Am. Compl. ¶¶ 1-2 ("Compl.".) This

action arises from a dispute over the design, marketing and sale of an employee defined benefit plan,

known as the PENdulum Plan (the "Plan"), and related insurance contracts issued by Defendant

Indianapolis Life Insurance Company ("Indianapolis Life"), which were used to fund the Plan.

(Compl. ¶ 20.)   Defendants Kenneth Hartstein, E.C.I. Pension Services, L.L.C. and Economic

Concepts, Inc. ("Hartstein/ECI), with "substantial assistance" from Defendant Bryan Cave L.L.P.

("Bryan Cave"), an international law firm, marketed, promoted and sold the Plan to Plaintiffs.  (*Id.*)

Plaintiffs allege that the Plan, which was marketed as a qualified plan under section 412(i) of the

Internal Revenue Code and represented to be a safe retirement savings plan for Mr. Hildebrandt,

was, in reality, a "tax avoidance scheme." (*Id.* at ¶ 22.)[1] Plaintiffs further allege that "on information

and belief, the Plan was designed, at least in part, by Bryan Cave." (*Id.* at ¶ 20.)

Although Plaintiffs have sued numerous Defendants, the Court will focus its attention on

the allegations pertaining to Defendant Bryan Cave, who filed the instant motion to dismiss.

Plaintiffs allege that in January 2002, Hartstein/ECI, in promoting the Plan and insurance policies,

provided Plaintiffs with a marketing brochure regarding the Plan and its attributes.  (*Id.* at ¶ 27.)

Among other things, the brochure described the plan as qualified under section 412(i) of the

Internal Revenue Code and stated that the Plan "has  secured a letter opinion" from the

international law firm of Bryan Cave that the Plan would "more likely than not" receive favorable

treatment under section 412(i).  (*Id.* at ¶ 31.)  Plaintiffs allege that the "letter opinion" refers to a

September 10, 1999 opinion letter issued by Bryan Cave to Hartstein/ECI (the "letter opinion"), and

that ECI has a "long standing professional relationship" with Bryan Cave, who is identified

prominently in the brochure as counsel to the Plan. (*Id.* at ¶ 42.)  Plaintiffs further allege that, in

preparing the letter opinion, Bryan Cave understood that ECI/Hartstein intended to market and sell

---

[1]Section 412(i) plans exempt certain defined benefit plans from rules applicable generally to
retirement plans. (*Id.* at ¶ 26.) Plaintiffs allege that establishing a section 412(i) plan is particularly attractive
to employers, because they can provide employees with retirement benefits, in the form of a life insurance
policy, while also taking a tax deduction for premiums paid on that policy.  (*Id.* at ¶¶ 26, 33, 36.)

the Plan, that Bryan Cave had been given a specimen Indianapolis Life policy, and that Bryan Cave

had been asked to render a legal opinion as to whether the Plan, if funded by the specimen policy

or a substantially similar policy, would "satisfy the requirements of section 412(i)." (*Id.* at ¶ 43.)

According to Plaintiffs, the letter opinion failed to analyze the tax risks associated with the

Plan, particularly those risks based on the "springing cash value" of the insurance policies, which

refers to the artificially depressed cash value of the policy in its early years followed by a rapid rise

in the value in subsequent years. (*Id.* at ¶¶ 33, 36, 44.) Plaintiffs allege that despite the lack of tax

risk analysis, Bryan Cave concluded that "it is more likely than not that the Pendulum Plan would

receive" favorable tax treatment under 412(i), and that the Plan "should not be considered a tax

shelter." (*Id.* at ¶ 45.) A tax shelter is "any plan or arrangement, if the principal purpose of the plan

or arrangement, based on objective evidence, is the avoidance or evasion of Federal income tax if

that purpose exceeds any other purpose." (*Id.*) Plaintiffs allege that through the promotional

materials, including Bryan Cave's endorsement, "Defendants failed to accurately inform, and in fact

affirmatively misled, Hildebrandt (and all others similarly situated) into believing he could safely and

legally realize a significant economic gain for his retirement that would not be subject to taxation,

[and] that the Plan represented an appropriate and completely legitimate retirement planning

strategy for him and his wife." (*Id.* at ¶ 48.)

Having set up the Plan in 2002, allegedly based on the representations and omissions

regarding the qualified nature of the Plan, and after paying annual premiums for the life insurance

policies with which it was funded, Plaintiffs learned in April 2004 that the IRS was auditing the 2002

tax return for the Plan. (*Id.* at ¶¶ 49, 52, 54.) At that time, Plaintiffs engaged Bryan Cave to

represent them in that audit. (*Id.* at ¶¶ 54, 55.) In the engagement letter dated April 26, 2004,

Bryan Cave represented to Plaintiffs that its continuing representation of Hartstein/ECI "represents a potential conflict of interest because of their involvement in the development of the Plan," and "complications could arise if the parties should, for example, be involved in litigation." (*Id.* at ¶ 55.) Nonetheless, the letter stated that "at this time we do not believe the conflict poses serious problems for" Desert Vista. (*Id.*) Plaintiffs further allege that the engagement letter failed to "acknowledge, address, seek or obtain informed consent to the conflict of interest posed by its own involvement in the events relating to the Plan." (*Id.* at ¶ 55.)

In 2006, Bryan Cave presented Plaintiffs with a Joint Representation Agreement (the "Agreement"), stating that Bryan Cave had been asked to represent Hartstein/ECI "with respect to claims related to pension plans similar to the [Pendulum Plan]." (*Id.* at ¶ 57.)   The Agreement further disclosed that "lawyers currently with Bryan Cave were involved in providing advice to ECI in connection with the Plans, including but not limited to tax related advice, and Bryan Cave received an inquiry from the IRS regarding its role in connection with the Plans." (*Id.*)  Although recognizing that a conflict could arise, the agreement provided that "Bryan Cave is presently unaware of any fact which could give rise to such a conflict." (*Id.*)  Plaintiffs allege that the Agreement failed to "acknowledge, address or seek informed consent to the then-existing conflict of interest posed by the firm's ongoing representation of Hartstein/ECI and their role in promoting, marketing and selling the Plan and the Policy." (*Id.* at ¶ 58.)

In December 2005 and January 2006, the IRS notified Plaintiffs that the Plan did not qualify as a section 412(i) plan and assessed back taxes and penalties on Plaintiffs in excess of the premium paid for that year. (*Id.* at ¶ 62.)  On the advice of Bryan Cave, Plaintiffs paid the taxes and penalties assessed by the IRS. (*Id.* at ¶¶ 62, 63.) In a January 25, 2007 letter, the IRS reiterated its position

that "the insurance policy that has been purchased to fund the plan is what makes the plan meet the classification of a 'listed transaction' and thus constitutes an abusive plan in operation." (*Id.* at ¶ 64.)

Plaintiffs allege that throughout the engagement, "Bryan Cave owed a fiduciary duty to [P]laintiffs, [and that] notwithstanding that duty, Bryan Cave did not advise [P]laintiffs of the true ramifications of the IRS determination that the Plan was abusive and did not qualify under section 412(i), and instead actively sought to minimize the severity of the situation in [P]laintiffs' eyes[.]" (*Id.* at ¶ 59.) Further, Plaintiffs allege that "Bryan Cave failed to disclose, and in fact concealed, the existence of claims or remedies [Plaintiffs] could pursue against Bryan Cave and the other defendants in this action, failed to advise Plaintiffs of the facts sufficient for them to understand the potential for such claims or remedies, failed to advise plaintiffs to seek the assistance of other, non-conflicted counsel, and failed to advise Plaintiffs of any statute of limitations applicable to claims that might be brought against defendants in this action." (*Id.* at ¶ 60.) According to Plaintiffs, "[a]s a result of [Bryan Cave's conduct], any statute of limitations otherwise applicable to any claim in this action has been tolled." (*Id.* at ¶ 60.)

In December 2007, Plaintiffs filed this lawsuit against Bryan Cave, Hartstein/ECI and numerous others. Although the complaint contains thirteen counts, only Count Seven (for breach of fiduciary duty and constructive fraud) names Bryan Cave individually. Counts Eight through Thirteen, brought against all Defendants, are as follows: Count Eight (negligent misrepresentation), Count Nine (non-disclosure), Count Ten (aiding and abetting tortious conduct), Count Eleven (joint and several liability), Count Twelve (respondeat superior) and Count Thirteen (punitive damages). Bryan Cave has filed a motion to dismiss Counts Seven through Thirteen for failure to

state a claims under Federal Rule of Civil Procedure 12(b)(6). It generally argues that Count Seven

for breach of fiduciary duty should be dismissed because applicable law and documents establish that

Bryan Cave did not breach any duties owed to Plaintiffs and did not cause them harm. (Def. Mot.

at 2-3.)[2] As to all remaining counts, Bryan Cave contends that Plaintiffs' attempt to include Bryan

Cave in generic claims as to "All Defendants" should be rejected, because Plaintiff have failed to

allege the facts and essential elements necessary to assert any of these causes of action against Bryan

Cave. ( *Id.* at 3.) After setting forth the applicable legal standard, the Court will address more

specifically Bryan Cave's arguments in support of the motion to dismiss, as well as Plaintiffs'

arguments in opposition.

## II.

## ANALYSIS

**A.      Applicable Law**

### *1. Law Applicable in MDL Cases*

This action is before the Court as a result of a forum transfer by the Multidistrict Litigation

Panel. Therefore, as to matters of state law, the Court is bound to apply the state law of the

transferor forum. 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL

---

[2]Attached to Bryan Cave's motion is the Affidavit of Douglas E. Whitney, Esq. and Exhibits 1 through 3 thereto. (doc. 29). Exhibit 1 is a copy of the September 10, 1999 letter opinion from Richard Smith of Bryan Cave to Kenneth R. Hartstein. Exhibit 2 is a copy of the April 26, 2004 engagement letter from Bryan Cave to Plaintiff Mr. Hildebrandt and Exhibit 3 is a copy of the Joint Representation Agreement. The Court may consider documents on a motion to dismiss without converting that motion into one for summary judgment where the documents are central to the plaintiffs' claims and are referred to in the complaint. *In Re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007). Exhibits 1 through 3 are referred to in the First Amended Complaint and are central to Plaintiffs' claims. Furthermore, Plaintiffs do not argue against the documents being considered by the Court. Accordingly, the Court will consider these exhibits in deciding the motion to dismiss.

PRACTICE AND PROCEDURE ("Wright & Miller"), § 3866 at 528-29 (2007) (citing *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (other citations omitted)).   As to matters of federal law, however, it is the law of the transferee court that governs.  *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (other citations omitted)).

Counts Seven through Thirteen of Plaintiffs' First Amended Complaint, which are the subject of Bryan Cave's motion, are premised on violations of Arizona law.   Plaintiffs initially filed this action in Arizona state court (prior to removal and transfer).  Therefore, the Court must look to Arizona state law to determine the requisite elements of each count.  *See* Wright & Miller, § 3866 at 528-29 (and cases cited therein).   On the other hand, because pleading requirements are purely matters of federal law, so the Court looks to the law of this Court and this Circuit for the controlling Rule 12(b)(6) standards. *See Prudential Ins. Co. of Amer. v. Clark Consulting, Inc.*, 548 F.Supp.2d 619, 623 (N.D. Ill. 2008) (pleading requirements in federal courts are governed by the federal rules and not by state law)

### 2.  *Rule 12(b)(6) Standards*

A 12(b)(6) motion to dismiss is disfavored and rarely granted.  *Ramirez v. Walker*, 199 F. App'x 302, 306 (5th Cir. 2006) (citing *Lowrey v. Texas A&M University*, 117 F.3d 242, 247 (5th Cir. 1997)).  The complaint should be liberally construed in the favor of the non-moving party and the court must determine whether the complaint states any valid claim for relief whenever viewed in the light most favorable to the non-moving party and with every doubt resolved on their behalf.  *Id.*  A 12(b)(6) motion will only succeed whenever it can be shown that the opposing party did not present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127

S. Ct. 1955, 1960 (2007). A claim cannot simply be conceivable, but must be "nudged . . . across the line from conceivable to plausible." *Id.*

In considering a Rule 12(b)(6) motion, the Court cannot look beyond the pleadings and any attachments thereto.  FED. R. CIV. P. 12(b)(6).  Documents attached to a defendant's motion to dismiss, however, are considered part of the pleadings if they are central to plaintiff's claims and are referenced in the complaint.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Sheppard v. Tex. Dep't of Transp.*, 158 F.R.D. 592, 595-96 (E.D. Tex. 1994)

## B.      Bryan Cave's Motion to Dismiss

As already stated, Bryan Cave has filed a motion to dismiss Counts Seven through Thirteen for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court first addresses Count Seven, the only count naming Bryan Cave individually.

### 1.      *Count Seven (Breach of Fiduciary Duty and Constructive Fraud)*

Count Seven alleges that when "Bryan Cave undertook the representation of [P]laintiffs, it owed them a fiduciary duty, including a duty of utmost loyalty and honesty," that Bryan Cave breached its duties and "[i]f this or any other Court determined that any claim otherwise available to plaintiffs is time-barred, then plaintiffs have been damaged by Bryan Cave's breach in an amount to be determined at trial." (Compl. ¶¶ 106-109.)  Bryan Cave contends that Count Seven is deficient because Plaintiffs have not alleged any cognizable damages, an element of a cause of action for breach of fiduciary duty.  (Def. Mot. at 6 (citing *AMERCO v. Shoen*, 184 Ariz. 150, 156, 907 P.2d 536, 542 (Ariz. Ct. App. 1995)).)  Specifically, Bryan Cave contends that Count Seven should be dismissed because:

Plaintiffs only seek speculative damages based on a court's potential, future legal

findings. Plaintiffs' request for damages assumes not only that a court would find their claims time-barred, but it further assumes that the underlying claims have merit and that, if not time barred, Plaintiffs would prevail on those claims. It is therefore apparent that Plaintiffs bring the breach of fiduciary duty claim merely as a safety valve for their claims against other defendants, not to redress any actual harm caused by Bryan Cave's alleged breach of any duty owed to Plaintiffs. Accordingly Plaintiffs fail to allege the current and cognizable harm necessary to state a breach of fiduciary duty claim.

(*Id.* at 9 (citations omitted).)

In response, Plaintiffs argue that they correctly anticipated the "usual defense of statute of limitations arguments that are now pending before the Court" and "[i]f the Court or jury concludes that any claim is untimely, then Hildebrandt will have suffered very substantial damages as a result of Bryan Cave's breach of fiduciary duty." (Pl. Resp. at 17.) Plaintiffs further argue that they are permitted to plead alternatively, as Bryan Cave has joined the other Defendants in asserting that Plaintiffs' claims are time-barred by the applicable statute of limitations. (*Id.*)

In further support of its motion, Bryan Cave contends in its reply brief that Count Seven fails because "no such claim presently exists as it is conditioned on a finding that the claims against other defendants are time-barred. As for now, the breach of fiduciary duty claim merely serves as a 'placeholder' for a potential future claim against Bryan Cave." (Reply at 7.)[3] The Court agrees that such a conditional claim fails.

"Standing and ripeness are prerequisites to the exercise of federal jurisdiction." *Texas Midstream Gas Svcs., LLC v. City of Grand Prairie*, 2008 WL 5000038, at *1 (N.D. Tex Nov. 25,

---

[3]Bryan Cave also points out that Plaintiffs are mistaken regarding their charge that Bryan Cave has asserted that Plaintiffs claims are time-barred, and that Bryan Cave incorporated by reference in its motion only those substantive arguments of the other Defendants as to underlying liability. (Reply at 6 n.1; Mot. at 12 n. 3.) Having reviewed the legal briefing, the Court finds no indication that Bryan Cave has moved to dismiss based on statute of limitations.

2008) (citations omitted). "Standing involves constitutional limitations on federal court jurisdiction and prudential limits on its exercise." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To satisfy the prerequisites of Article III, Plaintiffs must show they (1) suffered an injury in fact (one that is concrete and actual, not hypothetical), (2) there is a causal connection between the injury and the challenged conduct of the defendants, and (3) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Plaintiffs' own response essentially concedes that any injury allegedly suffered at this juncture is hypothetical. (*See* Pl. Resp. at 17 ("[i]f the Court or jury concludes that any claim is untimely, then Hildebrandt will have suffered very substantial damages as a result of Bryan Cave's breach of fiduciary duty." ).) In light of the lack of actual and concrete injury alleged, the Court determines that Plaintiffs lack standing to assert Count Seven.

As to the ripeness doctrine, "'[t]he basic rationale [. . . ] is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Texas Midstream Gas Svcs.*, 2008 WL 5000038, at *2 (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008)). The doctrine of ripeness "weeds out 'those matters that are premature because the injury is speculative and may never occur.'" *Id.* (quoting *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* (quoting *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)).

Plaintiffs' claim against Bryan Cave for breach of fiduciary duty is premature because the "injury is speculative and may never occur." *Texas Midstream Gas Svcs.*, 2008 WL 5000038, at *2 (quoting *United Transp. Union*, 205 F.3d at 857). That Count Seven is not ripe is further supported

by the Court's March 25, 2009 memorandum opinion (doc. 74) in this case denying Hartstein/ECI's

and Indianapolis Life's respective motions to dismiss Plaintiffs' claims as time-barred under the

applicable statutes of limitations.  Rejecting Hartstein/ECI's and Indianapolis Life's argument that

Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) as time-barred, the Court concluded

that it "will entertain the issue [of whether Plaintiffs' claims are time-barred] under Rule 56 but

instructs the parties that, ultimately, the resolution of the limitations question may require credibility

determinations by the fact-finder." (*Id.* at 9.)  As further factual development is required to decide

the statute of limitations' issue, Plaintiffs' fiduciary duty claim is not ripe for adjudication.  *See Texas

Midstream Gas Svcs.*, 2008 WL 5000038, at *2 (quoting *Monk*, 340 F.3d at 282) ("A case is generally

ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual

development is required.").

In short, having determined that Plaintiffs lack standing to bring Count Seven, and that

Count Seven is not ripe for adjudication, the Court grants Bryan Cave's motion to dismiss Count

Seven of the First Amended Complaint.[4]  Count Seven is dismissed without prejudice.[5]

---

[4]In light of the Court's determination that Count Seven is not ripe and Plaintiffs lack standing to
assert a claim for breach of fiduciary duty, the Court need not address Bryan Cave's alternative argument in
support of its motion to dismiss Count Seven *with prejudice*, namely, that the scope of Bryan Cave's
representation, as set forth in the engagement letter, was limited to the IRS Audit of the Plan. (*See* Def. Mot.
at 7 ("The scope of Bryan Cave's representation was clearly set forth in the April 2004 engagement letter
signed by Plaintiffs and was expressly limited to the IRS audit.").)  The Court notes, however, that whether
the Internal Revenue Service's audit of the Plan would include matters related to Mr. Hildebrandt's financial
interests as affected by the substance of the audit, including the ultimate determination by the IRS that the
Plan was an abusive tax shelter, requires further development of the factual record, and cannot be resolved
on a motion to dismiss.

Plaintiff Mr. Hildebrandt has submitted a declaration stating: "When Bryan Cave initially undertook
my representation, its engagement letter referred to "the Internal Revenue Service audit of your pension plan,"
by which I understood that the firm was representing me (and Desert Vista) on matters related to my financial
interests as they were affected by the substance of the audit, which ultimately resulted in the IRS
determination that the Plan was an abusive tax shelter." (Pl. Resp. at Ex. A (Decl. of Dave Hildebrandt ¶

### 2.    *Counts Eight and Nine (Negligent Misrepresentation & Non-disclosure)*

Count Eight is against all Defendants, and alleges that "Defendants provided false, incorrect and misleading information regarding the Plan and the Policy for the guidance of plaintiffs and others in their business transactions." (Compl. ¶ 111.)  In Count Eight, Plaintiffs assert Defendants:

> "intended and/or knew or should have known that plaintiffs or others in plaintiffs' position would rely on the information, and provided it for that purpose.  In the case of Bryan Cave, the opinion provided was given for the express purpose, and with the express understanding, that Hartstein/ECI [and other Defendants] would be promoting, marketing and selling the Plan with an Indy Life policy like the Policy issued to plaintiffs, making plaintiffs reasonably foreseeable users of the favorable opinion."

(*Id.* at ¶ 112.)  Plaintiffs allege that Defendants failed to exercise reasonable care or competence, and that Plaintiffs justifiably relied on the information and have incurred damages. (*Id.* at ¶¶ 114-15.) In addition to the affirmative representations, Plaintiffs also allege a cause of action for nondisclosure by Defendants.

Count Nine is also against all Defendants and alleges that Defendants had a duty to disclose the risks and possible adverse tax consequences associated with the Plan, that the Plan was designed around "springing cash values," that the IRS was investigating defined benefit plans using "springing

---

12).) As Bryan Cave correctly states, the declaration may not be weighed or even considered in the 12(b)(6) context. *See Gust, Rosenfeld & Henderson, v. Prudential Ins. Co.*, 898 P.2d 964, 967, 182 Ariz. 586, 589 (Ariz. 1995).  The Court construes Bryan Cave's argument in this regard, which is included in its Motion to Dismiss (doc. 29), as a request that the Hildebrandt declaration be stricken and will treat it as a Motion to Strike. Accordingly, the **Court GRANTS Bryan Cave's motion to strike** the Hildebrandt declaration attached to Plaintiffs' Response. Given the ambiguity regarding the scope of representation meant to be encompassed by "the IRS Audit of the Plan," however, the Court determines that the scope of representation arising out of the engagement letter is not able to be determined absent development of the factual record.

[5]Plaintiffs' constructive fraud claim requires a breach of fiduciary duty, and therefore is similarly dismissed.  *See Walters v. First Fed. Sav. & Loan Ass'n*, 131 Ariz. 321, 325, 641 P.2d 235, 239 (Ariz. 1982).

cash values, and that there was a possibility the IRS would consider the Plan an abusive tax scheme. (*Id.* at ¶ 117.)   Plaintiffs further allege that Defendants breached this duty by failing to make "reasonable and prudent disclosures" concerning these risks and other well-known and reasonably discoverable dangers associated with the Plan.  (*Id.* at ¶ 118.)

Bryan Cave moves to dismiss Count Eight because Plaintiffs "fail to allege any duty owed by Bryan Cave prior to Plaintiffs' retention of Bryan Cave in April 2004, fail to allege any misrepresentation by Bryan Cave, and fail to allege any reasonable reliance on any such misrepresentation." (Def. Mot. at 10.)  With regard to a duty, Bryan Cave contends that no duty could have arisen prior to 2004 when Plaintiffs retained it, and that any duty was limited to the IRS audit of the Plan.  As to any actionable misrepresentation, Bryan Cave argues that the only allegation is that "Bryan Cave provided its opinion for the purpose and with the understanding that other defendants would be promoting and selling the Plan and Policy issued to Plaintiffs," and therefore Plaintiffs are not "foreseeable users" of the opinion.  Finally, Bryan Cave argues that Plaintiffs could not have reasonably relied on its opinions regarding the Plan, since the letter opinion states that the "opinion is solely for the information of ECI[.]" *Id.*  As to Count Nine, Bryan Cave's sole argument is that Plaintiffs have failed to allege a duty owed to Plaintiffs.

In response, Plaintiffs contend that under the Restatement (Second) of Torts, § 552, followed by the Arizona courts, Plaintiffs have sufficiently stated a claim for negligent misrepresentation. The Court agrees with Plaintiffs.

Arizona courts follow the law of negligent misrepresentation set forth in the Restatement (Second) of Torts, § 552(1), which provides:

One who, in the course of his business, profession or employment, or in any other

transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary        loss caused to them by their justifiable reliance
                    upon the information, if he fails to exercise
                    reasonable care or competence in obtaining or
                    communicating the information.

*Accord St. Joseph's Hosp. & Medical Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 303, 312, 742 P.2d 804, 813 (Ariz. 1987). Under the Restatement, liability is "narrow in scope because it is premised on the reasonable expectations of a foreseeable user of information supplied in connection with commercial transactions." *Id.,* 154 Ariz. at 312-13, 742 P.2d at 813-14. Moreover, under § 552, the duty to disclose arises in the situation where a professional supplying information "for the guidance of others in their business transaction." *See generally Kuehn v. Stanley*, 208 Ariz. 124, 128-29, 91 P.3d 346, 350-51 (Ariz. Ct. App. 2004); *MM Global Services, Inc. v. Dow Chemical Co.*, 283 F.Supp.2d 689, 706 (D. Conn. 2003) (under § 552 of Restatement (Second) of Torts, "no special relationship is required to state a claim of negligent misrepresentation."). Further, such a claim may be based on affirmative misrepresentations and omission by non-disclosure. *See, e.g, Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 598 n.3, 892 P.2d 1375, 1387 n.3 (Ariz. App. 1994) ("[n]egligent misrepresentation may be by omission or nondisclosure of material facts as well as by overt misrepresentation."); *Aliberti, LaRochelle & Hodson Eng. Corp. v. FDIC*, 844 F.Supp. 832, 843-44 (D. Maine 1994) ("the Restatement [§ 552] specifically refers to false 'information,' drawing omissions as well as misstatements within the scope of its basis for general liability.").

Plaintiffs specifically allege that Bryan Cave understood that ECI/Hartstein intended to market and sell the Plan, that Bryan Cave had been given a specimen Indianapolis Life policy, and that Bryan Cave had been asked to render a legal opinion as to whether the Plan, if funded by the

specimen policy or a substantially similar policy, would "satisfy the requirements of section 412(i)."
 (Compl. ¶ 43.)  Plaintiffs allege that Bryan Cave provided false and misleading information about

the Plan and the Policy for the guidance of Plaintiffs in their business transaction, and intended

and/or knew that plaintiffs or others in their position would rely on that information.  Plaintiffs also

allege that Bryan Cave failed to exercise reasonable care or competence in connection with

providing the information.  The Court determines that these allegations are sufficient to state a claim

for negligent misrepresentation under the Restatement § 552.

Moreover, the Court rejects Bryan Cave's argument that Plaintiffs needed to actually receive

the Bryan Cave letter opinion and review its terms to have relied upon it.  (Def. Mot. at 11.)

Comments *g* and *h* to Restatement § 552 address the situation where information is supplied

indirectly, as in this instance, where the Bryan Cave letter opinion that the Plan would "more likely

than not" satisfy section 412(I) of the Internal Revenue Code was contained in Hartstein/ECI's

marketing brochure, which was provided to Plaintiffs.  Comment *h* provides:

> [I]t is not necessary that the maker should have any particular person in mind as the
> intended, or even the probable, recipient of the information. In other words, it is not
> required that the person who is to become the plaintiff be identified or known to the
> defendant as an individual when the information is supplied. It is enough that the
> maker of the representation intends it to reach and influence either a particular
> person or persons, known to him, or a group or class of persons, distinct from the
> much larger class who might reasonably be expected sooner or later to have access
> to the information and foreseeably to take some action in reliance upon it. *It is
> enough, likewise, that the maker of the representation knows that his recipient intends to
> transmit the information to a similar person, persons or group. It is sufficient, in other
> words, insofar as the plaintiff's identity is concerned, that the maker supplies the information
> for repetition to a certain group or class of persons and that the plaintiff proves to be one of
> them, even though the maker never had heard of him by name when the information was
> given.* It is not enough that the maker merely knows of the ever-present possibility of
> repetition to anyone, and the possibility of action in reliance upon it, on the part of
> anyone to whom it may be repeated.

Restatement (Second) of Torts § 552, comment *h* (emphasis added).[6]   Further, whether Plaintiffs'

reliance was reasonable in the face of language in the letter opinion that the opinion was for ECI

requires the Court to look at the circumstances surrounding any waiver, which cannot be determined

on a motion to dismiss.  *See Kealy v. Carolina Cas. Ins. Co.*, 2007 WL 158734, at \*3 (D. Ariz. Jan.

16, 2007) (whether waiver of legal rights is effective rests on circumstances of waiver); *Dawson* v.

Withycombe, 216 Ariz. 84, 98, 163 P.3d 1034, 1048 (Ariz. App. 2007) (courts will not enforce

agreement waiving reliance on representations where agreements were induced by fraud or

misconduct).

Accordingly, the Court denies Bryan Cave's motion to dismiss Counts Eight and Nine.

### 3.      *Count Ten (Aiding and Abetting)*

In Count Ten, Plaintiffs allege that Defendants committed numerous torts that injured them,

the Defendants knew their co-Defendants' conduct constituted a breach of duty and/or intentional

tort, and that Defendants substantially assisted and encouraged their co-Defendants in the

achievement of the tortious conduct.  (Compl. ¶¶ 121-23.)   Bryan Cave moves to dismiss Count

Ten, arguing that "Plaintiffs do not allege that Bryan Cave knew that the conduct of any defendants

supposedly breached a duty owed to Plaintiffs and because providing the ECI opinion to ECI does

not constitute 'substantial assistance' to any allegedly tortious conduct."  (Def. Mot. at 12.)   In

opposition, Plaintiffs argue that have sufficiently alleged aiding and abetting under Arizona law.  (Pl.

---

[6]Although ultimately the facts may show that Plaintiffs are "from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it" and therefore not protected under the Restatement § 552 comment *h*, at this juncture the Court determines that the pleadings are sufficient to bring Plaintiffs within the protection of the Restatement. *See Kuehn*, 208 Ariz. at 128-29, 91 P.3d at 350-51 (granting summary judgment based on facts showing that Plaintiffs were "from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.").

Resp. at 13-14.)   Having considered the pleadings, and drawing all inferences in the light most

favorable to Plaintiffs, the Court determines that Plaintiffs have stated a claim for aiding and

abetting sufficient to withstand a motion to dismiss for failure to state a claim.

> Under Arizona law:
>
> For a person to be liable for a tort for aiding and abetting it must be shown that the person knew the primary tortfeasor's conduct constituted a tort, and that the person substantially assisted or encouraged the primary tortfeasor in accomplishing the tort. As this theory of liability depends upon proof of scienter, it must be shown that the defendants knew the conduct they allegedly aided and abetted was a tort. This knowledge may be inferred from the circumstances presented. Actual and complete knowledge of the details of the primary tort may not be necessary in all cases; the knowledge requirement may be satisfied by showing general awareness of the primary tortfeasor's fraudulent scheme.

*Dawson*, 216 Ariz. 84, 102,163 P.3d 1034, 1052 (Ariz. App. 2007) (internal citations omitted).  As

to Bryan Cave's first argument that "Plaintiffs do not allege that Bryan Cave knew that the conduct

of any defendants supposedly breached a duty owed to Plaintiffs" (Def. Mot. at 12), Bryan Cave is

wrong.  Plaintiffs allege that each Defendant (which includes Bryan Cave) "knew that [its] co-

defendants' conduct constituted a breach of duty and/or intentional tort."   (Compl. ¶ 122.)

Moreover, under Arizona law, "the knowledge element for aiding and abetting may be averred

generally" and "such knowledge may be inferred from the circumstances." *YF Trust v. JP Morgan*

*Chase Bank*, 2008 WL 821856, at *5 (D. Ariz. March 26, 2008) (denying motion to dismiss aiding

and abetting claim).  The Court determines that Plaintiffs have sufficiently pleaded that Bryan Cave

knew that the conduct he allegedly aided and abetted was a tort.

The Court also rejects Bryan Cave's second argument, namely, that Plaintiffs have failed to

show that Bryan Cave's letter opinion constituted "substantial assistance" to any allegedly tortious

conduct." (*See* Def. Mot. at 12.)    Plaintiffs allege that each Defendant (which includes Bryan

Cave) "substantially assisted and encouraged [its] co-defendants in the achievement of the tortious conduct directed against plaintiffs." (Compl. ¶ 123.) Whether Bryan Cave actually provided "substantial assistance" would require the Court to make factual determinations, which is inappropriate at this juncture. In short, viewing all inferences in the light most favorable to Plaintiffs, the Court determines that, as to Count Ten, Plaintiffs have present[ed] "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1960. Accordingly, the Court denies Bryan Cave's motion to dismiss Count Ten.

### 4.    *Count Eleven (Joint and Several Liability)*

Under Arizona law, joint and several liability may apply when "[b]oth the party and the other person were acting in concert" (Ariz. Rev. Stat. Ann. § 12-2506(D)(1)), defined as "entering into a conscious agreement to pursue a common plan or design to commit an intentional tort and actively take part in that intentional tort." *Id.* at § 12-2506(F). Bryan Cave moves to dismiss Count Eleven, arguing that "Plaintiffs do not allege that Bryan Cave committed any intentional tort," and that Plaintiffs cannot make the requisite showing of an agreement between Bryan Cave and the other Defendants. (Def. Mot. at 14.)

The Complaint alleges that Hartstein/ECI committed intentional torts including fraud (*see* Count One), and that Bryan Cave had a "long standing professional relationship" with Hartstein/ECI. (Compl. ¶ 42.) Further, the Complaint alleges, albeit on information and belief, that Bryan Cave was instrumental in designing the Plan, and that Bryan Cave acted in concert with his co-Defendants. (*Id.* at ¶ 126.) Viewing all inferences in the light most favorable to Plaintiffs, the Court determines that Plaintiffs' allegations are sufficient to state a claim for joint and several liability under Arizona law. Whether Plaintiffs can ultimately establish that Bryan Cave and

- 18 -

Hartstein/ECI entered into an agreement to pursue a common plan or design to commit an intentional tort is a question of fact, which the Court will take up on summary judgment. Accordingly, the Court denies Bryan Cave's motion to dismiss Count Eleven.

### 5.    *Count Twelve (Respondeat Superior)*

Bryan Cave moves to dismiss Count Twelve since "Plaintiffs fail to allege the requisite agency relationship as to Bryan Cave." (Def. Mot. at 14.)  In fact, the First Amended Complaint alleges the requisite agency relationship in several instances.  Paragraph 19 alleges that:

> [A]ll defendants...at all relevant times were acting as one another's agents, actual or apparent...The defendants identified as business entities were at all relevant times acting by and through officers, agents, and employees who were acting within the scope of their employment, authority, and agency, and were acting in concert as an enterprise such that these corporations or other such entities are bound by and vicariously and jointly and severally liable for the conduct of their own officers, agents, and employees, and those of their co-defendants.

(Compl. ¶ 19.)  Furthermore, paragraphs 130-132 provide that:

> At all times material herein, defendants acted for themselves through and by the acts and omissions of their attorneys and agents.  Defendants' attorneys' and agents' actions were all undertaken during the course and scope of their representation and agency, actual and/or apparent, of the defendants.  Under the doctrine of respondeat superior and general principles of agency, defendants are liable for the acts and omissions of their agents and attorneys.

(*Id.* at ¶ 130-32.)  Additionally, paragraph 127 alleges that "defendants were acting as agents and/or servants of their co-defendants within the meaning of A.R.S. § 12-2506(D)(2)."  (*Id.* at ¶ 127.)  In light of these allegations of agency, the Court denies Bryan Cave's motion to dismiss Count Twelve.

### 6.    *Count Thirteen (Punitive Damages)*

Bryan Cave has moved to dismiss Plaintiffs' request for punitive damages, contending that Plaintiffs do not allege that Bryan Cave's conduct had the requisite level of severity to merit

imposition of punitive damages. (Def. Mot. at 15.)  As certain claims still remain, the issue of

whether Bryan Cave acted with "evil mind," as that term is defined by Arizona courts, is an issue of

fact, and not appropriately considered on the pleadings. *See Hearn v. R.J. Reynolds Tobacco Co.*, 279

F.Supp.2d 1096, 1117 (D. Ariz. 2003) ("Since this Court has not dismissed all Plaintiffs' claims, the

issue of whether or not the Defendant acted with an evil mind remains to be resolved, and the

Defendants' Motion to Dismiss relating to Plaintiffs' punitive damages claim will be denied.").

Accordingly, the Court denies Bryan Cave's motion to dismiss Count Thirteen.

## III.

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Defendant

Bryan Cave LLP's Motion to Dismiss First Amended Class Action Complaint Pursuant to Fed. R.

Civ. P. 12(b)(6) (doc. 29).  The Court **GRANTS** the motion to dismiss Count Seven, and dismisses

without prejudice Plaintiffs' claim for breach of fiduciary duty.  The Court **DENIES** the motion to

dismiss as to Counts Eight through Thirteen.

**SO ORDERED.**

**Dated: March 30, 2009**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE