UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVE HILDEBRANDT, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | CIVIL ACTION NO. 3:08-CV-1815-B |
| v. | § | |
| | § | (Part of MDL No. 1983; Formerly |
| INDIANAPOLIS LIFE INSURANCE | § | No. CV 08-825-PHX-MMM in the |
| COMPANY, et al., | § | District of Arizona) |
| | § | |
| **Defendants.** | | |

## MEMORANDUM OPINION

This case involves a tax shelter investment program and is before the Court as a result of a forum transfer from a federal district court in Arizona to this Court by the Multidistrict Litigation Panel. Before the Court is Defendant American Express Tax & Business Services, n/k/a RSM McGladrey, Inc.'s Motion to Dismiss First Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), filed June 2, 2008. (doc. 24). Having considered the motion, response, reply, pleadings and applicable law, the Court grants in part and denies in part the Motion as set forth herein.

## I.

## BACKGROUND

Plaintiffs are Desert Vista Marketing Group ("Desert Vista") and it president, Dave Hildebrandt ("Hildebrant") (collectively, "Plaintiffs"). (Pl. First Am. Compl. ("Compl.") ¶¶ 1-2.) This action arises from a dispute over the design, marketing and sale of an employee defined benefit plan, known as the PENdulum Plan (the "Plan"), and related insurance contracts issued by

Defendant Indianapolis Life Insurance Company ("Indianapolis Life"), which were used to fund the Plan. (Compl. ¶ 20.) Defendants Kenneth Hartstein, E.C.I. Pension Services, L.L.C. and Economic Concepts, Inc. ("Hartstein/ECI), with "substantial assistance" from Defendant Bryan Cave L.L.P. ("Bryan Cave"), marketed, promoted and sold the Plan to Plaintiffs. (*Id.*) Plaintiffs allege, on information and belief, that Defendant American Express Tax & Business Services, n/k/a RSM McGladrey, Inc. ("Amex") "approached Hartstein/ECI and Indianapolis Life with the [P]lan concept and assisted Hartstein/ECI and Bryan Cave with the design of the Plan." (*Id.* at ¶ 21.) Plaintiffs allege that the Plan, which was marketed as a qualified plan under section 412(i) of the Internal Revenue Code, and represented to be a safe retirement savings plan for Mr. Hildebrandt, was, in reality, a "tax avoidance scheme." (*Id.* at ¶ 22.)[1]

Although numerous Defendants are named in this suit, the issues at hand pertain to Defendant Amex, the entity that filed the pending motion to dismiss. The Court notes that, of the 137 paragraphs in the First Amended Complaint, only four (4) paragraphs specifically mention Amex, and those paragraphs contain allegations based "on information and belief." (*See id.* at ¶¶ 21, 27, 29, 30.) Plaintiffs allege that in January 2002, Hartstein/ECI, in promoting the Plan and insurance policies, provided Plaintiffs with a marketing brochure regarding the Plan and its attributes. (*Id.* at ¶ 27.) "Although the sales brochure included a financial analysis targeted to Desert Vista and Mr. Hildebrandt, based on a particular level of premium, it was otherwise a form document describing the attributes of the Plan and the insurance policy that would be used to fund

---

[1]Section 412(i) plans exempt certain defined benefit plans from rules applicable generally to retirement plans. (*Id.* at ¶ 26.) Plaintiffs allege that establishing a section 412(i) plan is particularly attractive to employers, because they can provide employees with retirement benefits, in the form of a life insurance policy, while also taking a tax deduction for premiums paid on that policy. (*Id.* at ¶¶ 26, 33, 36.)

the Plan." (*Id.*) On information and belief, Plaintiffs allege that "the same or substantially similar and uniform promotional materials were developed by Amex" and other Defendants "to promote, market and sell the Plan not only to Hildebrandt and Desert Vista, but to others similarly situated to Hildebrandt." (*Id.* at ¶ 29.) Also based on information and belief, Plaintiffs further allege that Indianapolis Life and/or Amex "sponsored seminars in which [they] encouraged industry professionals to promote, market and sell these policies." (*Id.* at ¶ 30.) Among other things, the brochure described the Plan as qualified under section 412(i) of the Internal Revenue Code and stated that the Plan "has secured a letter opinion" from the international law firm of Bryan Cave that the Plan would "more likely than not" receive favorable treatment under section 412(i). (*Id.* at ¶ 31.) Plaintiffs allege that through the promotional materials, including Bryan Cave's endorsement, "Defendants failed to accurately inform, and in fact affirmatively misled, Hildebrandt (and all others similarly situated) into believing he could safely and legally realize a significant economic gain for his retirement that would not be subject to taxation, [and] that the Plan represented an appropriate and completely legitimate retirement planning strategy for him and his wife." (*Id.* at ¶ 48.)

Having set up the Plan in 2002, allegedly based on the representations and omissions regarding the qualified nature of the Plan, and after paying annual premiums for the life insurance policies with which it was funded, in April 2004, Plaintiffs learned that the IRS was auditing the 2002 tax return for the Plan. (*Id.* at ¶¶ 49, 52, 54.) At that time, Plaintiffs engaged Bryan Cave to represent them in that audit. (*Id.* at ¶¶ 54, 55.) In December 2005 and January 2006, the IRS notified Plaintiffs that the Plan did not qualify as a section 412(i) plan and assessed back taxes and penalties on Plaintiffs in excess of the premium paid for that year. (*Id.* at ¶ 62.) On the advice of Bryan Cave, Plaintiffs paid the taxes and penalties assessed by the IRS. (*Id.* at ¶¶ 62, 63.) In a

January 25, 2007 letter, the IRS reiterated its position that "the insurance policy that has been purchased to fund the plan is what makes the plan meet the classification of a 'listed transaction' and thus constitutes an abusive plan in operation." (*Id.* at ¶ 64.)

In December 2007, Plaintiffs filed this lawsuit against Amex, Bryan Cave, Hartstein/ECI and others. Of the thirteen counts contained in the First Amended Complaint, Counts One through Four specifically name Amex (as well as certain other Defendants) and Counts Eight through Thirteen are brought against all Defendants.[2] Counts One through Four against Amex , are as follows: Count One (fraudulent misrepresentation and omissions), Count Two (breach of fiduciary duty and constructive fraud); Count Three (fraudulent inducement); and Count Four (violation of applicable state statutes). The remaining counts brought against all Defendants are as follows: Count Eight (negligent misrepresentation), Count Nine (non-disclosure), Count Ten (aiding and abetting tortious conduct), Count Eleven (joint and several liability), Count Twelve (respondeat superior) and Count Thirteen (punitive damages). Amex has filed a motion to dismiss Counts One through Four and Counts Eight through Thirteen for failure to state a claims under Federal Rule of Civil Procedure 12(b)(6) and/or Rule 9(b). After setting forth the applicable legal standard, the Court will address Amex's arguments in support of the motion to dismiss, as well as Plaintiffs' arguments in opposition.

---

[2]Counts Four through Seven are against other Defendants, and therefore not before the Court on Amex's motion to dismiss.

II.

ANALYSIS

A.      **Applicable Law**

1.  *Law Applicable in MDL Cases*

This action is before the Court as a result of a forum transfer by the Multidistrict Litigation Panel. Therefore, as to matters of state law, the Court is bound to apply the state law of the transferor forum. 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE ("Wright & Miller"), § 3866 at 528-29 (2007) (citing *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 576 (5th Cir. 1996) and *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (other citations omitted)). As to matters of federal law, however, it is the law of the transferee court that governs. *Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (other citations omitted)).

As Counts One through Four and Eight through Thirteen of Plaintiffs' First Amended Complaint (which are the subject of Amex's motion) are premised on violations of Arizona state law, and Plaintiffs initially filed this action in Arizona state court (prior to removal and transfer), the Court must look to Arizona state law to determine the requisite elements of each count. *See* Wright & Miller, § 3866 at 528-29 (and cases cited therein). On the other hand, because pleading requirements are purely matters of federal law, the Court looks to the law of this Court and this Circuit for the controlling Rule 12(b)(6) and Rule 9(b) standards. *See Prudential Ins. Co. of Amer. v. Clark Consulting, Inc.,* 548 F.Supp.2d 619, 623 (N.D. Ill. 2008) (pleading requirements in federal courts are governed by the federal rules and not by state law)

### 2. *Rule 12(b)(6) Standards*

A 12(b)(6) motion to dismiss is disfavored and rarely granted. *Ramirez v. Walker*, 199 F. App'x 302, 306 (5th Cir. 2006) (citing *Lowrey v. Texas A&M University*, 117 F.3d 242, 247 (5th Cir. 1997)). The complaint should be liberally construed in the favor of the non-moving party and the court must determine whether the complaint states any valid claim for relief when viewed in the light most favorable to the non-moving party and with every doubt resolved on their behalf. *Id.* A 12(b)(6) motion will only succeed whenever it can be shown that the opposing party did not present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, __, 127 S. Ct. 1955, 1974 (2007). To survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Id.*, 127 S. Ct. at 1965. A claim cannot simply be conceivable, but must be "nudged . . . across the line from conceivable to plausible." *Id.*

In considering a Rule 12(b)(6) motion, the Court cannot look beyond the pleadings and any attachments thereto. Fed. R. Civ. P. 12(b)(6). Documents attached to a defendant's motion to dismiss, however, are considered part of the pleadings if they are central to plaintiff's claims and are referenced in the complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Sheppard v. Tex. Dep't of Transp.*, 158 F.R.D. 592, 595-96 (E.D. Tex. 1994).

### 3. *Rule 9(b)*

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity." FED. R. CIV. P. 9(b).  The amount of particularity required for pleading fraud differs from case to case.  *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific").   In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).  Essentially, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

## B.     Amex's Motion to Dismiss

Amex has filed a motion to dismiss Counts One through Four and Counts Eight through Thirteen for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and/or Federal Rule of Civil Procedure 9(b).  Amex contends that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) as (i) all claims are time-barred under the applicable Arizona statutes of limitations, and (ii) Plaintiffs have failed to state a claim upon which relief may be granted.  As to the fraud-based claims, in addition to arguing that Plaintiffs have failed to state a claim, Amex argues that dismissal is required under Rule 9(b) for failure to plead fraud with the requisite particularity.

### 1.     *Statute of Limitations*

In its motion, Amex moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that Plaintiffs' claims are time-barred under Arizona law.  Specifically, Amex

contends that the majority of Plaintiffs' claims (Count One, Count Three, part of Count Four, Count Five, Count Nine and Count Ten) are subject to a three-year limitations period under § 12-543 of the Arizona Revised Statutes. *See* ARIZ. REV. STAT. ANN. § 12-543 (2008). (Amex Mot. at 5-8.) As to Counts Two and Eight of Plaintiffs' First Amended Complaint, Amex contends these counts are subject to a two-year limitations period under § 12-542 of the Arizona Revised Statutes. *See* ARIZ. REV. STAT. ANN. § 12-542 (2008). (Amex. Mot. at 8-9.) Finally, Amex maintains that Plaintiffs' claims for consumer fraud and insurance misrepresentation contained in Count Four fall under a one-year limitations period pursuant to sections 20-443, 20-444 and 44-1521 of the Arizona Revised Statutes. *See* ARIZ. REV. STAT. ANN. § 20-443 (2008); ARIZ. REV. STAT. ANN. § 20-444 (2008); ARIZ. REV. STAT. ANN. § 44-1521 (2008). (Amex. Mot. at 9.)

Amex argues that all of Plaintiffs' claims are time-barred under the foregoing Arizona provisions because the Plaintiffs were on notice of their claims no later than April 2004 when they learned that the IRS was auditing their plan. Amex contends because this suit was filed more than three years after the IRS began its audit, all of Plaintiffs' claims are time-barred. Plaintiffs disagree with Amex's theory that their claims accrued in April 2004 when they were told about the IRS audit. Instead, they maintain that it was not until mid-2007 when they discovered that they had been affirmatively misled by Defendants' representations as to the legality of the tax shelters.

In its recent Memorandum Opinion denying Defendants Indianapolis Life's and Hartstein/ECI's motion to dismiss these very same claims as barred by statute of limitations, the Court stated that whether Plaintiffs' claims were time-barred under Arizona law could not be decided by a motion to dismiss. The Court stated:

> In sum, in order to properly decide this fact-bound question of when the Plaintiffs

- 8 -

knew or reasonably should have known of their claims, the Court must be able to examine proof not proper via Rule 12(b)(6) and, perhaps not even permissible on summary judgment. The Court will entertain the issue under Rule 56 but instructs the parties that, ultimately, the resolution of the limitations question may require credibility determinations by the fact-finder.

Mem. Op. (doc. 75) (internal citation omitted).  As Amex makes the same arguments as Indianapolis Life and Hartstein/ECI, and the allegations and applicable statute of limitations are identical, the Court incorporates by reference its March 26, 2009 memorandum opinion, and based on that opinion, hereby denies Amex's motion to dismiss insofar as it is based on statute of limitations.

### 2.  *Counts One and Three (Plaintiffs' Fraud-Based Claims )*

Amex argues that Plaintiffs' fraud-based claims should be dismissed for failure to plead the necessary elements of a fraud claim under Arizona law and for failure to satisfy the particularity requirements of Rule 9(b).   The fraud-based claims include:  Count One (fraudulent misrepresentation and omissions) and Count Three (fraudulent inducement).[3]  Amex argues that Counts One and Three fail because Plaintiffs have not alleged that Amex made any false statements to Plaintiffs or knew any statements were false.  (Def. Reply at 6.)  In response, Plaintiffs point to paragraphs 74-81, 83 and 116 of the Complaint and assert that these paragraphs tie Amex to their fraud allegations.  (Pl. Resp. at 4.)

Under Arizona law, fraudulent misrepresentation has nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the defendant's knowledge of its falsity or ignorance of its truth; (5) the defendant's intent that it should be acted upon by the plaintiff and in the manner reasonably contemplated; (6) the plaintiff's ignorance of its falsity; (7) the plaintiff's reliance on its truth; (8)

---

[3]Certain of Plaintiffs' statutory claims are also fraud-based, and will be considered below.

the plaintiff's right to rely thereon; and (9) the injury proximately caused. *Dillon v. Zeneca Corp.*, 202 Ariz. 167, 171-72, 42 P.3d 598, 602-03 (2002); *Davis v. First Nat'l Bank of Arizona*, 124 Ariz. 458, 465, 605 P.2d 37, 44 (App. 1979). A claim of fraudulent inducement and/or failure to disclose (omission) under Arizona law similarly requires proof of all nine elements of fraud. *Meritage Homes Corp. v. Hancock*, 522 F.Supp. 2d 1203, 1218 (D. Ariz. 2007) (and cases cited therein).

The Court has reviewed the entirety of Plaintiffs' First Amended Complaint. Other than the conclusory allegations in paragraphs 74-81 (Count One), whereby Plaintiffs recite the elements of a cause of action for fraudulent misrepresentation (and paragraphs 83 and 116, which incorporate by reference the previous paragraphs), the Court has found no factual allegations that Amex made any false statements to Plaintiffs or knew any statements were false. As stated by the Supreme Court in *Twombly*, to survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Twombly*, 127 S. Ct. at 1965. Even liberally construing the First Amended Complaint in favor of Plaintiffs, and resolving every doubt on their behalf, the Court concludes that Plaintiffs have failed to allege that Amex made any false statements to Plaintiffs or knew any statements were false. *See Dillon*, 202 Ariz. at 171-72, 42 P.3d at 602-03. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court grants Amex's motion to dismiss Plaintiffs' claims for fraudulent misrepresentation and omission (Count One) and fraudulent inducement (Count Three) for failure to state a claim.

Alternatively, the Court agrees with Amex that Counts One and Three should be dismissed for failure to plead fraud with the requisite particularity under Rule 9(b). As Amex correctly argues, "[t]he Complaint here contains no specific allegations regarding time, place and specific content of the alleged fraudulent conduct, as well as the specific identities of the parties to the alleged conduct."

(Amex. Mot. at 10 (citation omitted); *see also* Reply at 9.)  While Plaintiffs are correct that the amount of particularity required for pleading fraud differs from case to case (*see Benchmark Elec., Inc.*, 343 F.3d at 724; *Williams*, 112 F.3d at 178), in this case only four(4) of the 137 paragraphs in the pleadings mention Amex, and then only "on information and belief."  (*See* Compl. ¶¶ 21, 27, 29, 30.) No specificity exists as to Amex, and Plaintiffs have not alleged that Amex made any particular statement.  All the Court has is vague allegations that Amex was involved in developing the "same or substantially similar materials" as other Defendants and that Amex and/or Indianapolis Life sponsored seminars to promote the Plan.  (*Id.* at ¶¶ 29-30.)

Further, to the extent Plaintiffs rely on "information and belief" pleading to meet their Rule 9(b) requirements, the Court determines that Plaintiffs have failed to plead the factual basis for their belief.  Under Fifth Circuit law,

> A plaintiff may rely on information and belief to plead fraud in compliance with Rule 9(b) when "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). "[E]ven where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id.*

*U.S. ex rel. Coppock v. Northrop Grumman Corp.*, 2002 WL 1796979, at *10 (N.D. Tex. Aug. 21, 2002) (Fitzwater, J.).  Here, there is no statement of facts upon which the belief is based.  Moreover, as Amex notes, "if, as Plaintiffs purport, [Amex] was involved in 'marketing' and 'sponsoring industry seminars' – actions that by their nature include interaction with outsiders – [Amex's] actual involvement could not be 'peculiarly within [its] knowledge' to justify allegations made upon mere 'information and belief.'" (Reply at 11.)

Further, the Court rejects Plaintiffs' argument that discovery should be permitted prior to repleading.  (*See* Pl. Resp. at 8 n.4.)  Plaintiffs rely on Ninth Circuit case law to support this request.

As already stated, as to matters of federal law, however, it is the law of the transferee court that governs. *See Menowitz*, 99 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d at 1175). Cases in the Fifth Circuit have noted that one of the purposes of Rule 9(b) is to "prevent[] plaintiff from filing a claim and then attempting to uncover unknown wrongs through discovery." *U.S. ex rel. Foster v. Bristol-Meyers Squibb Co.*, 587 F.Supp.2d 805, 819 (E.D. Tex. 2008) (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).

In light of the foregoing, in addition to granting Amex's motion to dismiss Counts One and Three for failure to state a claim, the Court grants Amex's motion to dismiss Counts One and Three for failure to plead fraud with the requisite particularity under Rule 9(b).

### 3. *Count Two (Breach of Fiduciary Duty and Constructive Fraud)*

Amex contends that Count Two should be dismissed because Plaintiffs have failed to set forth a "special, confidential relationship with" Amex. ( Reply at 6.) In response, Plaintiffs cite to a Third Circuit case involving ERISA, and argue that in the ERISA context, "actuaries may have a fiduciary relationship to plan participants." (Pl. Resp. at 9.) Further, Plaintiffs cite to paragraphs 86-88 of the First Amended Complaint.

Plaintiffs have alleged no facts under which the Court can discern any basis for a fiduciary relationship arising under Arizona law. Paragraphs 86 though 88 merely contain conclusory allegations that Amex breached a fiduciary duty and thereby committed constructive fraud. As stated earlier, to survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Twombley*, 127 S. Ct. at 1965. Further, ERISA, a federal statutory scheme, is irrelevant to the Court's analysis of whether Plaintiffs have stated a claim for breach of fiduciary duty under Arizona law. In any event, Plaintiffs have not alleged

- 12 -

that the Plan was an ERISA Plan, or any other facts that would give rise to a fiduciary duty under ERISA.

In short, having determined that Plaintiffs have failed to allege a fiduciary relationship with Amex, the Court grants Amex's motion to dismiss Count Two of the First Amended Complaint.[4]

### 4.    Count Four (State Statutory Claims)

In Count Four, Plaintiffs allege that Amex (as well as Harstein/ECI, Indianapolis Life and others) violated Section 20-443, Section 20-444, Section 44-3241 and Section 44-1522 of the Arizona Revised Statutes.[5]  *See* ARIZ. REV. STAT. ANN. §§ 20-443, 20-444, 44-3241; ARIZ. REV. STAT. ANN. § 44-1522 (2008).  Section 20-443 forbids misrepresenting the terms or benefits and advantages of an insurance policy.  Section 20-444 forbids the publishing, dissemination or circulation of deceptive or misleading sales materials "with respect to the business of insurance."  Section 44-3241 prohibits fraudulent conduct in the provision of investment advisory services.  Section 44-1522 is the Arizona Consumer Fraud Act.

Under Arizona law, statutory causes of action relying on allegations of fraud and misrepresentation, such as those set forth in Count Four, are subject to Rule 9(b).  *Beshears v. Provident Life & Acc. Ins. Co.*, 2007 WL 1438738, at *3 (D. Ariz. May 15, 2007) (dismissing section 44-1522 claim under Rule 9(b) for failure to plead with particularity); *Williamson v. Allstate Ins. Co.*,

---

[4]Plaintiffs' constructive fraud claim requires a breach of fiduciary duty, and therefore is similarly dismissed.  *See Walters v. First Fed. Sav. & Loan Ass'n*, 131 Ariz. 321, 325, 641 P.2d 235, 239 (Ariz. 1982).

[5]The Court notes that, as Defendant points out in its Motion to Dismiss, "Plaintiffs appear to allege a consumer fraud violation pursuant to A.R.S. § 44-1522, but do not cite that section of the statute.  Rather, they merely cite the definition of "merchandise" from A.R.S. § 44-1521." (Amex. Mot. at 15 (citing Compl. ¶ 96.).)  The Court construes the allegation as a violation of § 44-1522 and analyzes it as such.

204 F.R.D. 641, 644 (D. Ariz. 2001) (state statutory causes of action relying on allegations of fraud and misrepresentation are subject to Rule 9(b)).  All of Plaintiffs' statutory claims herein allege that Amex made false and deceptive representations (*see* Compl. ¶¶ 94-98), thereby subjecting the statutory claims in Count Four to Rule 9(b)'s heightened pleading requirements. *Williamson*, 204 F.R.D. at 644.  For the reasons already set forth above in the Court's analysis of Counts One and Three (*see supra*), Plaintiffs have failed to plead fraud with requisite specificity.  Accordingly, the Court grants Amex's motion to dismiss Count Four for failure to satisfy Rule 9(b).

### 5.    *Counts Eight and Nine (Negligent Misrepresentation & Non-disclosure)*

Count Eight is against all Defendants, and alleges that "Defendants provided false, incorrect and misleading information regarding the Plan and the Policy for the guidance of plaintiffs and others in their business transactions."  (*Id.* at ¶ 111.)  According to Count Eight, Defendants "intended and/or knew or should have known that plaintiffs or others in plaintiffs' position would rely on the information, and provided it for that purpose." (*Id.* at ¶ 112.)  Plaintiffs allege that Defendants failed to exercise reasonable care or competence, and that Plaintiffs justifiably relied on the information and have incurred damages.  (*Id.* at ¶¶ 114-15.)  In addition to the affirmative representations, Plaintiffs also allege a cause of action for nondisclosure by Defendants.  Count Nine alleges that Defendants had a duty to disclose the risks and possible adverse tax consequences associated with the Plan, that the Plan was designed around "springing cash values," that the IRS was investigating defined benefit plans using "springing cash values, and the possibility that the IRS would consider the Plan an abusive tax scheme.  (*Id.* at ¶ 117.)  Plaintiffs further allege that Defendants breached this duty by failing to make "reasonable and prudent disclosures" concerning these risks and other well-known and reasonably discoverable dangers associated with the Plan.  (*Id.* at ¶ 118.)

Amex contends that Counts Eight and Nine should be dismissed since Plaintiffs' claims fall short of stating a claim for negligent misrepresentation and non-disclosure under Arizona law. Specifically, Amex argues that Plaintiffs do not allege that Amex – as opposed to other Defendants – "supplied any information or made any representations to them. Nor do Plaintiffs allege that they relied on any information provided to them by [Amex], that [Amex] failed to exercise reasonable care in supplying any such information, or that [Amex] knew that the recipients of any such information would supply it to Plaintiffs." (Amex. Mot. at 13.) In response, Plaintiffs contend that under the Restatement (Second) of Torts, § 552, followed by the Arizona courts, Plaintiffs have sufficiently stated a claim for negligent misrepresentation and non-disclosure. The Court agrees with Plaintiffs.

Arizona courts follow the law of negligent misrepresentation set forth in the Restatement (Second) of Torts, § 552(1), which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Accord St. Joseph's Hosp. & Medical Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 303, 312, 742 P.2d 804, 813 (Ariz. 1987). Under the Restatement, liability is "narrow in scope because it is premised on the reasonable expectations of a foreseeable user of information supplied in connection with commercial transactions." *Id.*, 154 Ariz. at 312-13, 742 P.2d at 813-14. Moreover, under § 552, the duty to disclose arises in the situation where a professional supplying information "for the guidance of others in their business transaction." *See generally Kuehn v. Stanley*, 208 Ariz. 124, 128-29, 91 P.3d 346,

- 15 -

350-51 (Ariz. Ct. App. 2004); MM *Global Services, Inc. v. Dow Chemical Co.*, 283 F.Supp.2d 689, 706

(D. Conn. 2003) (under § 552 of Restatement (Second) of Torts, "no special relationship is required

to state a claim of negligent misrepresentation.").  Further, such a claim may be based on affirmative

misrepresentations and omission by non-disclosure.  *See, e.g, Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586,

598 n.3, 892 P.2d 1375, 1387 n.3 (Ariz. App. 1994) ("[n]egligent misrepresentation may be by

omission or nondisclosure of material facts as well as by overt misrepresentation."); *Aliberti,*

*LaRochelle & Hodson Eng. Corp. v. FDIC*, 844 F.Supp. 832, 843-44 (D. Maine 1994) ("the

Restatement [§ 552] specifically refers to false 'information,' drawing omissions as well as

misstatements within the scope of its basis for general liability.").

Plaintiffs allege, on information and belief, that Amex "approached Hartstein/ECI and

Indianapolis Life with the [P]lan concept and assisted Hartstein/ECI and Bryan Cave with the design

of the Plan." (Compl. ¶ 21.)  Plaintiffs allege that the Plan, which was marketed as a qualified plan

under section 412(i) of the Internal Revenue Code, and represented to be a safe retirement savings

plan for Mr. Hildebrandt, was, in reality, a "tax avoidance scheme." (*Id.* at ¶ 22.)  Plaintiffs allege

that all Defendants provided false and misleading information about the Plan and the Policy for the

guidance of Plaintiffs in their business transaction, and intended and/or knew that plaintiffs or others

in their position would rely on that information.  Plaintiffs also allege that Defendant failed to

exercise reasonable care or competence in connection with providing the information.  The Court

determines that, drawing all inferences in the light most favorable to Plaintiffs, these allegations

(although sparse) are sufficient to state a claim for negligent misrepresentation and/or non-disclosure

under the Restatement § 552.

The fact that Plaintiffs do not allege Amex supplied information *directly* to them is not fatal

- 16 -

to Plaintiffs' claim.  Comments *g* and *h* to Restatement § 552 address the situation where information

is supplied indirectly, as Plaintiffs appear to be alleging with regard to Amex. Comment *h* provides:

> [I[t is not necessary that the maker should have any particular person in mind as the
> intended, or even the probable, recipient of the information. In other words, it is not
> required that the person who is to become the plaintiff be identified or known to the
> defendant as an individual when the information is supplied. It is enough that the
> maker of the representation intends it to reach and influence either a particular
> person or persons, known to him, or a group or class of persons, distinct from the
> much larger class who might reasonably be expected sooner or later to have access
> to the information and foreseeably to take some action in reliance upon it. *It is
> enough, likewise, that the maker of the representation knows that his recipient intends to
> transmit the information to a similar person, persons or group. It is sufficient, in other
> words, insofar as the plaintiff's identity is concerned, that the maker supplies the information
> for repetition to a certain group or class of persons and that the plaintiff proves to be one of
> them, even though the maker never had heard of him by name when the information was
> given.* It is not enough that the maker merely knows of the ever-present possibility of
> repetition to anyone, and the possibility of action in reliance upon it, on the part of
> anyone to whom it may be repeated.

Restatement (Second) of Torts § 552, comment *h* (emphasis supplied).[6]

In light of the foregoing, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court

denies Amex's motion to dismiss Counts Eight and Nine.

### 6.      *Count Ten (Aiding and Abetting)*

In Count Ten, Plaintiffs allege that Defendants committed numerous torts that injured them,

the Defendants knew their co-Defendants' conduct constituted a breach of duty and/or intentional

tort, and that Defendants substantially assisted and encouraged their co-Defendants in the

---

[6]Although ultimately the facts may show that Plaintiffs are "from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it" and therefore not protected under the Restatement § 552 comment *h*, at this juncture the Court determines that the pleadings are sufficient to bring Plaintiffs within the protection of the Restatement. *See Kuehn*, 208 Ariz. at 128-29, 91 P.3d at 350-51 (granting summary judgment based on facts showing that Plaintiffs were "from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.").

achievement of the tortious conduct. (Compl. ¶¶ 121-23.)

> Under Arizona law:
>
> For a person to be liable for a tort for aiding and abetting it must be shown that the person knew the primary tortfeasor's conduct constituted a tort, and that the person substantially assisted or encouraged the primary tortfeasor in accomplishing the tort. As this theory of liability depends upon proof of scienter, it must be shown that the defendants knew the conduct they allegedly aided and abetted was a tort. This knowledge may be inferred from the circumstances presented. Actual and complete knowledge of the details of the primary tort may not be necessary in all cases; the knowledge requirement may be satisfied by showing general awareness of the primary tortfeasor's fraudulent scheme.

*Dawson v. Withycombe*, 216 Ariz. 84, 102,163 P.3d 1034, 1052 (Ariz. App. 2007) (internal citations omitted).

Amex moves to dismiss Count Ten, arguing that, "even assuming, arguendo, that [Amex] knew the pension policies at issue were risky," the allegations in the Complaint "do not support the proposition that [Amex] knew that any other Defendant would commit a tort." (Amex. Mot. at 14.) Amex further argues that Plaintiffs cannot show that any involvement by Amex constituted "substantial assistance." (*Id.*) In opposition, Plaintiffs argue that have sufficiently alleged aiding and abetting under Arizona law. (Pl. Resp. at 13-14.) Having considered the pleadings, and drawing all inferences in the light most favorable to Plaintiffs, the Court determines that Plaintiffs have stated a claim for aiding and abetting sufficient to withstand a motion to dismiss for failure to state a claim. Plaintiffs allege that each Defendant (which includes Amex) "knew that [its] co-defendants' conduct constituted a breach of duty and/or intentional tort." (Compl. ¶ 122.) Moreover, under Arizona law, "the knowledge element for aiding and abetting may be averred generally" and "such knowledge may be inferred from the circumstances." *YF Trust v. JP Morgan Chase Bank*, 2008 WL 821856, at *5 (D. Ariz. March 26, 2008) (denying motion to dismiss aiding and abetting claim). The Court

determines that Plaintiffs have sufficiently plead that Amex knew that the conduct he allegedly aided and abetted was a tort.

The Court also rejects Amex's second argument, namely, that Plaintiffs have failed to show "substantial assistance" to any allegedly tortious conduct.  Plaintiffs allege that each Defendant (which again includes Amex) "substantially assisted and encouraged [its] co-defendants in the achievement of the tortious conduct directed against plaintiffs." (*Id.* at ¶ 123.)  Whether Amex actually provided "substantial assistance" would require the Court to make factual determinations, which is inappropriate at this juncture.[7]

In short, viewing all inferences in the light most favorable to Plaintiffs, the Court determines that, as to Count Ten, Plaintiffs have present[ed] "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1960.  Accordingly, the Court denies Amex's motion to dismiss Count Ten.

### 7.      *Count Eleven (Joint and Several Liability)*

Under Arizona law, joint and several liability may apply when "[b]oth the party and the other person were acting in concert" (Ariz. Rev. Stat. Ann. § 12-2506(D)(1)), defined as "entering into a conscious agreement to pursue a common plan or design to commit an intentional tort and actively take part in that intentional tort." *Id.* § 12-2506(F).  "Acting in concert does not apply to any person whose conduct was negligent in any of its degrees rather than intentional." *Mein ex rel. v.*

---

[7]In its Reply, Amex contends that because the allegations specifically against it are "on information and belief," and the remaining allegations of aiding and abetting are against all Defendants, the aiding and abetting claim must fail.  Aiding and abetting under Arizona law is not subject to Rule 9(b), as Amex's argument presupposes.  Moreover, the case Amex cites to support this argument is an insider trading case alleging violations of securities acts and is not based on Arizona law.  (Reply at 8 (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).)

*Cook*, 219 Ariz. 96, 193 P.3d 790, 793 (Ariz. App. 2008).  Amex moves to dismiss Count Eleven,

arguing that the pleadings are insufficient to state a claim of joint and several liability under Arizona

law.  The Court agrees.  Even viewing all inferences in the light most favorable to Plaintiffs, Plaintiffs

do not allege that Amex committed any intentional tort or that the existence of any agreement

between Amex and the other Defendants.  Allegations that "[u]pon information and belief, [Amex]

approached Hartstein/ECI with the [P]lan concept and assisted [them] and Bryan Cave with the

design of the Plan," and that "[u]pon information and belief, [Indianapolis Life] and/or [Amex]

sponsored seminars in which [they] encouraged industry professionals to promote, market, and sell

these policies," (Compl. ¶¶ 21, 30), is insufficient for the Court to infer any "conscious agreement

to pursue a common plan or design to commit an intentional tort and actively take part in that

intentional tort." ARIZ. REV. STAT. ANN. § 12-2506(F).  Absent such allegations, the Court grants

Amex's motion to dismiss Count Eleven.

### 8.    *Count Twelve (Respondeat Superior)*

Amex moves to dismiss Count Twelve, arguing that Plaintiffs fail to allege that Amex exerted

any control over other Defendants or that they exercised control over Plaintiffs.  (Amex. Mot. at

16.)  According to Amex, absent control, there can be no vicarious liability under the common law

theory of respondeat superior.  *Id.* (citing *Bible v. First Nat's Bank of Rawlins*, 21 Ariz. App. 54, 56-57,

515 P.2d 351, 354 (Ariz. App. 1973) and *Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 508,

794 P.2d 138, 141 (Ariz. 1990)).  "The fundamental criterion [of the master-servant relationship]

is the extent of control the principal exercises or may exercise over the agent." *Santiago*, 164 Ariz.

at 508 (citations omitted).  Amex is correct that Plaintiffs fail to allege that Amex exerted any

control over other Defendants or that they exercised control over Plaintiffs.  Accordingly, the Court

grants Amex's motion to dismiss Count Twelve.[8]

### 9.    Count Thirteen (Punitive Damages)

Amex has moved to dismiss Plaintiffs' request for punitive damages, contending that Plaintiffs do not allege that Amex's alleged conduct had the requisite level of severity to merit imposition of punitive damages. (Amex. Mot. at 16-17.)   As certain claims still remain, the issue of whether Amex acted with "evil mind," as that term is defined by Arizona courts, is an issue of fact, and not appropriately considered on the pleadings.  *See Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1117 (D. Ariz. 2003) ("Since this Court has not dismissed all Plaintiffs' claims, the issue of whether or not the Defendant acted with an evil mind remains to be resolved, and the Defendants' Motion to Dismiss relating to Plaintiffs' punitive damages claim will be denied."). Accordingly, the Court denies Amex's motion to dismiss Count Thirteen.

### III.

### CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Defendant American Express Tax & Business Services, n/k/a RSM McGladrey, Inc.'s Motion to Dismiss First Amended Class Action Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. 24). The Court **GRANTS** the motion to dismiss as to Counts One, Two, Three, Four, Eleven and Twelve of Plaintiffs' First Amended Complaint, and dismisses these claims without prejudice to repleading.  The Court **DENIES** the motion to dismiss as to Counts Eight, Nine, Ten and Thirteen

---

[8]The Court is aware of the numerous allegations of agency in the First Amended Complaint. (*See* Compl. ¶¶ 19, 127, 130-32.)  As Amex correctly argues, however, absent allegations of control, the pleadings are insufficient.

of Plaintiffs' First Amended Complaint.

The Court does not take dismissal of a claim without reaching the merits lightly. Thus, a plaintiff will be given the opportunity to amend a Complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted.").

If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by ***no later than twenty (20) days from the date of this Order***. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, Amex is hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed within ten calendar days of the repleading. No further briefing will be permitted.

SO ORDERED.

Dated: March 31, 2009

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE