UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVE HILDEBRANDT, et al., § | |
| § | |
| Plaintiffs, § | |
| § | CIVIL ACTION NO. 3:08-CV-1815-B |
| v. § | |
| § | (Part of MDL No. 1983; Formerly |
| INDIANAPOLIS LIFE INSURANCE § | No. CV 08-825-PHX-MMM in the |
| COMPANY, et al., § | District of Arizona) |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION

On March 31, 2009, the Court issued a memorandum opinion in this case, granting in part and denying in part a motion to dismiss filed by Defendant American Express Tax & Business Services ("Amex") (doc. 77). Specifically, the Court granted Amex's motion to dismiss as to Plaintiffs' fraud-based claims, and allowed Plaintiffs Desert Vista Marketing Group ("Desert Vista") and its president, Dave Hildebrandt ("Hildebrandt") (collectively, "Plaintiffs") leave to amend. On April 20, 2009, Plaintiffs filed their Second Amended Class Action Complaint (doc. 84), which is the subject of this memorandum opinion.

### I.

### BACKGROUND

This case involves a tax shelter investment program, known as the PENdulum Plan (the "Plan"), and is before the Court as a result of a forum transfer from a federal district court in Arizona to this Court by the Multidistrict Litigation Panel. Plaintiffs allege that the Plan, which was marketed as a qualified plan under section 412(i) of the Internal Revenue Code, and represented to

be a safe retirement savings plan for Mr. Hildebrandt, was, in reality, a tax avoidance scheme. Plaintiffs assert various state law causes of action against Defendant Indianapolis Life Insurance Company ("Indianapolis Life"), which allegedly issued the insurance policy used to fund the Plan, as well as alleged consultants Kenneth Hartstein, E.C.I. Pension Services, L.L.C. and Economic Concepts, Inc. (collectively, "Hartstein/ECI"), and Defendant Bryan Cave L.L.P. ("Bryan Cave"), which allegedly drafted a letter opinion that the Plan would "more likely than not" receive favorable treatment under section 412(i).[1]  Plaintiffs have also sued Amex, a third-party administrator for the Plan, related to the design and promotion of the Plan.  This memorandum opinion only pertains to Plaintiffs' amended allegations against Amex.

At issue is the viability of Plaintiffs' Second Amended Complaint, filed April 20, 2009 (doc. 84).  Specifically, the Court must determine whether the allegations in the Second Amended Complaint overcome the pleading deficiencies set forth by the Court in its March 31, 2009 decision granting in part Amex's motion to dismiss (*see* doc. 77).  In light of the Court's familiarity with the case, and the parties' extensive prior briefing, rather than have the parties engage in yet another round of briefing on this issue, the Court directed Plaintiffs to file a synopsis with their Second Amended Complaint detailing how the amended pleadings overcame the deficiencies identified by the Court in its March 31 decision, and permitted Amex to file a response to the synopsis.  Plaintiffs filed their Synopsis on April 20, 2009 (doc. 85)[2], contending that the amended allegations cured the

---

[1]On March 26, 2009, the Court denied a motion to dismiss filed by Indianapolis Life and Hartstein/ECI. (doc 75.)  On March 30, the Court denied in part and granted in part Bryan Cave LLP's motion to dismiss, with no leave to amend. (doc. 76.)

[2]The Court assumes that the document titled "Plaintiffs' Supplementary Brief in Support of Opposition to Motion to Dismiss" (doc. 85) is Plaintiffs' Synopsis.

deficiencies noted by the Court. On April 30, 2009, Amex filed "Response of American Express Tax & Business Services, Inc. to Plaintiffs' Synopsis Regarding their Amendments to Claims Previously Dismissed by the Court" (hereinafter, "Amex Response") (doc. 86), arguing that the amended allegations are still deficient under FED. R. CIV. P. 12(b)(6) and 9(b). The issue is ripe for determination.

## II.

## ANALYSIS

In the Second Amended Complaint, Plaintiffs assert the same causes of action against Amex as in the First Amended Complaint, namely: Count One (fraudulent misrepresentation and omissions), Count Two (breach of fiduciary duty and constructive fraud); Count Three (fraudulent inducement); Count Four (violation of various Arizona statutes); Count Eight (negligent misrepresentation), Count Nine (non-disclosure), Count Ten (aiding and abetting tortious conduct), Count Eleven (joint and several liability), Count Twelve (respondeat superior) and Count Thirteen (punitive damages).

In its March 31, 2009 decision, the Court granted Amex's motion to dismiss Counts One through Four and Counts Eleven and Twelve of Plaintiffs' First Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) and/or 9(b), and denied Amex's motion as to all remaining counts. Although Plaintiffs contend in their Synopsis that "American Express's motion to dismiss [should] be denied in full in light of the additional allegations in the Second Amended Complaint," (*see* doc. 85 at 6), the Court notes that Plaintiffs' arguments only pertain to the Court's dismissal of Counts One through Four, and not Counts Eleven and Twelve. The Court accordingly limits its analysis to Counts One through Four.

A.  *Counts One and Three - Fraudulent Misrepresentations/Omissions and Fraudulent Inducement*

In the First Amended Complaint, Plaintiffs alleged, on information and belief, that Amex approached Hartstein/ECI and Indianapolis Life with the concept for the Plan and assisted Hartstein/ECI and Bryan Cave with the design of the Plan. (First Am. Comp. ¶ 21.) Plaintiffs further alleged, on information and belief, that Amex, like Hartstein/ECI, developed promotional materials about the Plan and, along with Indianapolis Life, sponsored seminars encouraging those in the industry to promote, market and sell the policies used to fund the Plan. (*Id.* ¶¶ 29, 30.) In its March 31, 2009 decision, the Court began by noting that, "of the 137 paragraphs in the First Amended Complaint, only four (4) paragraphs specifically mention Amex, and those paragraph contain allegations based on 'information and belief.'" (doc. 77 at 2.) Agreeing with Amex's arguments, the Court granted Amex's motion to dismiss Counts One and Three pursuant to FED. R. CIV. P. 12(b)(6) for failure to plead the necessary elements of a fraud claim under Arizona law, stating:

> The Court has reviewed the entirety of Plaintiffs' First Amended Complaint. Other than the conclusory allegations in paragraphs 74-81 (Count One), whereby Plaintiffs recite the elements of a cause of action for fraudulent misrepresentation (and paragraphs 83 and 116, which incorporate by reference the previous paragraphs), **the Court has found no factual allegations that Amex made any false statements to Plaintiffs or knew any statements were false**. As stated by the Supreme Court in *Twombly*[3], to survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." Even liberally construing the First Amended Complaint in favor of Plaintiffs, and resolving every doubt on their behalf, the Court concludes that Plaintiffs have failed to allege that Amex made any false statements to Plaintiffs or knew any statements were false.

(Doc. 77 at 10 (internal citation omitted) (emphasis added).) Alternatively, the Court dismissed

---

[3]*See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Counts One and Three pursuant to FED. R. CIV. P. 9(b), agreeing with Amex's argument that Plaintiffs failed to plead Counts One and Three with the requisite particularity: "As Amex correctly argues, the Complaint here contains no specific allegations regarding time, place and specific content of the alleged fraudulent conduct, as well as the specific identities of the parties to the alleged conduct." (*Id.* at 10-11 (internal citations and punctuation omitted).)

Plaintiffs argue in their Synopsis that the amended pleadings, along with a September 1999 letter from Amex to Mr. Hartstein (attached as Exhibit C to the Second Amended Complaint), cure these pleading deficiencies. Specifically, Plaintiffs posit that:

> Plaintiffs' Second Amended Complaint contains twenty-four new paragraphs and sub-paragraphs specifically describing American Express's fraudulent conduct. American Express's fraud arises out of an opinion letter dated September 13, 1999 (the "American Express opinion") which was later used in marketing materials to sell potential customers on the Plan. The American Express opinion endorsed the Plan as qualified under section 412(i) of the Internal Revenue Code without so much as mentioning the IRS's prior warnings regarding the illegitimacy of similarly-structured "springing cash value" plans, or the enormous potential risks to participants in the Plan should the IRS find that the Plan did not qualify under section 412(i). See Pl.'s Second Am. Compl., Exhibit "C".
>
> The American Express opinion endorsing the Plan was subsequently promoted in Plan marketing materials. The Plan marketing brochure trumpets that the "actuarial opinion for the PENdulum Plan is from AAS, the pension administration subsidiary of American Express." The explicit (in the American Express opinion referenced in the marketing brochure) and implicit (through its participation in the Plan as actuary and administrator) endorsement of the Plan by American Express, a large and well-known international finance company, would obviously serve as a significant material inducement to potential participants in the Plan. American Express stood to gain substantial fees from its work with the Plan, so the reasonable and logical inference is that American Express intended and understood that its endorsement of the Plan would be conveyed to potential customers – without warning them of the enormous risk involved.

(doc. 85 at 2-3.)

In its Response to Plaintiffs' Synopsis, Amex argues that:

> [C]ontrary to Plaintiffs' representations, the 1999 letter, on its face, makes plain that it was not being written to provide any type of "endorsement" of the Plan, but rather, to discuss how a theoretical Plan, like the one being developed by the other Defendants, could be administered by Amex as a third party administrator. Indeed, there is not a single sentence in the 1999 Letter that promotes, markets, or in any way recommends investment in any Plan, let alone the Plan at issue.

(doc. 86 at 2.) Amex further contends that "[i]n any event, while basing their entire amendments on the 1999 letter, Plaintiffs do not allege that the 1999 letter contained any misrepresentation by Amex, let alone fraudulent ones." (*Id.* at 3.) Instead, according to Amex, Plaintiffs allege that in the 1999 letter, Amex "did not analyze [the] differential or risk associated with springing cash value policies." (*Id.* (citing Sec. Am. Compl. ¶ 53).) Amex contends that, assuming Plaintiffs could establish that Amex had a duty to warn them of potential risks, "this would at best give rise to a negligence claim – not a fraud claim." (*Id.*)

The Court has reviewed the amended pleadings, including the 1999 letter attached as Exhibit C to the Second Amended Complaint, as well as Plaintiffs' Synopsis, and concludes that Plaintiffs have failed to cure the pleading deficiencies which resulted in the March 31, 2009 dismissal of Counts One and Three of the First Amended Complaint. Specifically, the letter only provides that Amex would be administering the Plan based on the "sample" plan policy Hartstein/ECI provided it, and based on "the opinion letter provided to it by Bryan Cave, L.L.P." (Ex. C to Sec. Am. Compl. at 4.) The Court agrees with Amex that, "[i]t defies credulity to conclude that a letter written in 1999 to Hartstein only for the purpose of providing administrative services should a plan ever come into being, was somehow drafted by Amex with the intent to defraud Plaintiffs, who invested in the Plan over two years later, or with the intent that it be relied on by Plaintiffs." (doc. 86 at 2-3.) Even assuming the veracity of all well-pleaded allegations, the Court determines that this lack of

plausibility inherent in Plaintiffs' allegations, alone, is fatal to Counts One and Three. *See generally Iqbal v. Ashcroft*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss.")  In any event, as argued by Amex, these allegations would at most give rise to a negligence claim, not a fraud claim.[4]

With regard to Rule 9(b), Plaintiffs argue in their Synopsis that "the Second Amended Complaint specifically describes the date, authors, and contents of the American Express opinion, as well as American Express's motivation for issuing it – the substantial fees it would receive for its work with the Plan." (doc. 85 at 5.)  In its Response, Amex argues that the amended allegations provide "no allegations regarding the time, place and specific content of any alleged fraudulent conduct by Amex." (doc. 86 at 4.)  The Court has already determined that the 1999 letter, upon which Plaintiffs base their fraud allegations, does not provide a sufficient basis for fraud claim against Amex. *See supra.*  Accordingly, the Court rejects Plaintiffs' arguments that pleading the author and date of the 1999 letter, somehow satisfies the heightened pleading requirements of Rule 9(b).

In short, the Court concludes that Plaintiffs have failed to overcome the pleading deficiencies which resulted in the Court's March 31, 2009 order dismissing Counts One and Three of Plaintiffs' First Amended Complaint (*see* doc. 77).  For the reasons stated above, as well as those articulated

---

[4] Additionally, the Court rejects Plaintiffs' argument in their Synopsis that the Restatement (Second) of Torts §§ 531 and 533 permits their fraud claim to go forward solely because "American Express's misrepresentations and material omissions in its opinion endorsing the Plan were made with the intent that the other Defendants would use the endorsement to induce potential customers to participate in the Plan." (doc. 85 at 4.)  Even given a liberal reading, it cannot be said that the 1999 letter "endorses" the Plan.  Moreover, Plaintiffs have not provided the Court with any authority that Arizona courts have adopted these sections of the Restatement to excuse Plaintiffs from establishing each of the required elements of a fraud claim. *See generally McAlister v. Citibank*, 171 Ariz. 207, 212, 829 P.2d 1253, 1258 (Ariz. App. 1992) ("a showing of fraud requires the concurrence of nine elements, including the speaker's intent that [the false representation] be acted upon by the recipient in the manner reasonably contemplated.")

by the Court in the March 31, 2009 decision (*see id.*), Counts One and Three of Plaintiffs' Second Amended Complaint are **DISMISSED** pursuant to FED. R. CIV. P. 9(b) and 12(b)(6).

B.      *Count Two (Breach of Fiduciary Duty and Constructive Fraud)*

In its March 31, 2009 decision, the Court granted Amex's motion to dismiss Count Two, wherein Plaintiffs alleged in highly conclusory fashion that Amex breached its fiduciary duty to them and thereby committed constructive fraud. Agreeing with Amex that Plaintiffs had failed to allege a "special, confidential relationship" with Amex, the Court, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), concluded that: "Plaintiffs have alleged no facts under which the Court can discern any basis for a fiduciary relationship arising under Arizona law." (doc. 77 at 12.)  In the Second Amended Complaint, Plaintiffs now allege that "as compared to plaintiffs, American Express had superior knowledge and expertise in the complex tax and benefit plan issues raised by the Plan and its purported qualification under section 412(i). This superior expertise in the area within the scope of the relationship with plaintiffs meant that American Express owed fiduciary duties to advise and act for the benefit of plaintiffs." (doc. 84, Sec. Am. Compl. ¶ 98.)

A confidential or fiduciary relationship under Arizona law "may be said to exist wherever trust and confidence is imposed in one person in the integrity and fidelity of another[,]" *Eagerton v. Fleming*, 700 P.2d 1389, 1391-392 (Ariz. App. 1985). However, "[m]ere trust in another's competence and integrity does not suffice; peculiar reliance in the trustworthiness of another is required . . . . In a fiduciary relationship, the fiduciary holds superiority of position over the beneficiary." *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335 (Ariz. App. 1996) (internal citations and punctuation omitted). "Although the existence of a fiduciary relationship is generally a question of fact, when the evidence is insufficient to support a verdict, the trial court has

a duty to decide the issue." *Id.* (internal citation and punctuation omitted).

Plaintiffs argue that the amended pleadings are sufficient to cure the pleading deficiencies which resulted in dismissal of Count Two. In opposition, Amex contends that even though the existence of a fiduciary duty is a question of fact, Plaintiffs are wrong that the issue cannot be decided on a dispositive motion. (doc. 86 at 5.) Having considered the amended pleadings, in particular paragraph 98, the Court determines that, under Arizona law, Plaintiffs have sufficiently alleged a breach of fiduciary duty by Amex to survive a motion to dismiss. While Amex is correct that where the evidence is insufficient to support a verdict, the trial court has a duty to decide the issue of whether a fiduciary relationship exists, such a decision cannot be made at this early juncture in the case. Indeed, the cases upon which Amex relies were decided after discovery. In short, the Court determines that Plaintiffs have sufficiently amended their pleadings to overcome the pleading deficiencies pertaining to Count Two. Whether Plaintiffs are able to establish a breach of fiduciary duty sufficient to withstand a motion for summary judgment is for a later day. Accordingly, Amex's motion to dismiss Count Two is **DENIED**.

C.  *Count Four (State Statutory Claims)*

In Count Four, Plaintiffs allege that Amex (as well as Harstein/ECI, Indianapolis Life and others) violated Section 20-443, Section 20-444, Section 44-3241 and Section 44-1522 of the Arizona Revised Statutes. *See* ARIZ. REV. STAT. ANN. § 20-443 (2008); ARIZ. REV. STAT. ANN. § 20-444 (2008); ARIZ. REV. STAT. ANN. § 44-3241 (2008); ARIZ. REV. STAT. ANN. § 44-1522 (2008). As the Court stated in its March 31, 2009 decision: "Under Arizona law, statutory causes of action relying on allegations of fraud and misrepresentation, such as those set forth in Count Four, are subject to Rule 9(b)." (doc. 77 at 13 (citations omitted).) For the reasons set forth above in the

Court's analysis of Counts One and Three, Plaintiffs' amended allegations still fail to satisfy the heightened pleading requirement of Rule 9(b). Accordingly, Count Four of Plaintiffs' Second Amended Complaint is hereby **DISMISSED** pursuant to FED. R. CIV. P. 9(b).

### III.

### CONCLUSION

For the reasons stated above, the Court determines that Plaintiffs have failed to allege sufficient facts to overcome the previously-stated grounds for dismissal of Counts One, Three and Four as set forth in the Court's March 31, 2009 decision (*see* doc. 77). Accordingly, with respect to Plaintiffs' Second Amended Complaint (doc. 84), it is hereby ADJUDGED that: Count One (fraudulent misrepresentation and omissions) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b) and 12(b)(6); Count Three (fraudulent inducement) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b) and 12(b)(6); Count Four (violations of ARIZ. REV. STAT. ANN. §§ 20-443, 20-444, 44-3241; ARIZ. REV. STAT. ANN. § 44-1522 (2008)) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b); Count Eleven (joint and several liability) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 12(b)(6), and Count Twelve (respondeat superior) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 12(b)(6).

Normally the Court will permit a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (while court may dismiss a

claim for failing to comply with Rule 9(b), "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."). In this case, Plaintiffs have had multiple opportunities to state a claim, including their Second Amended Complaint, filed after the Court's March 31, 2009 decision detailing the deficiencies in the pleadings. Under these circumstances, the Court determines that allowing further amendment will be futile and cause needless delay. Moreover, the Court notes that Plaintiffs have not requested the opportunity to replead. Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted.

**SO ORDERED.**

**Dated: September 4, 2009**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE